1 | Mona Z. Hanna, Esq., SBN 131439
2 | **MICHELMAN & ROBINSON, LLP**
  | 4 Hutton Centre Drive, Suite 300
3 | Santa Ana, California 92707
4 | Telephone: (714) 557-7990
  | Facsimile: (714) 557-7991
5 |
6 | Robert E. Davies, Esq., SBN 106810
  | **CAULFIELD, DAVIES & DONAHUE LLP**
7 | P.O. Box 277010
  | Sacramento, CA 95827-7010
8 | Telephone: (916) 817-2900
9 | Facsimile: (916) 817-2644
10 | Lewis E. Hassett, Esq.
11 | Jessica F. Pardi, Esq.
   | **MORRIS, MANNING & MARTIN, LLP**
12 | 1600 Atlanta Financial Center
13 | 3343 Peachtree Road
   | Atlanta, Georgia 30326
14 | Telephone: (404) 233-7000
15 | Facsimile: (404) 365-9532

16 | **Attorneys for Defendant:**
17 | **ACCESS CLAIMS ADMINISTRATORS, INC.**

18 | **UNITED STATES DISTRICT COURT**
19 | **EASTERN DISTRICT OF CALIFORNIA**
   | **SACRAMENTO DIVISION**
20 |

| | |
|---|---|
| LINCOLN GENERAL INSURANCE COMPANY, | Case No. 2:07-cv-01015-LKK-EFB |
| Plaintiff, | **DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA DUCES TECUM TO AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY** |
| v. | |
| ACCESS CLAIMS ADMINISTRATORS, INC., and DOES 1 through 75, inclusive, et al., | Hearing Date:  05/28/2008<br>Hearing Time:  10:00 a.m.<br>Hearing Judge: Hon. Edmund Brennan<br>Hearing Dept.: Courtroom 25<br>Complaint Filed: April 9, 2007 |
| Defendants. | Trial Date:    T.B.A. |

1

Defendant's Brief in
Support of Motion to Quash
Subpoena

1     COMES  NOW  Access  Claims  Administrators,  Inc.
2 ("Access Claims") and, pursuant to Fed. R. Civ. P. 45,
3 files this Brief in Support of its Motion to Quash
4 Plaintiff's Subpoena to American International Specialty
5 Lines Insurance Company.

6                          **INTRODUCTION**

7     Plaintiff's subpoena (the "Subpoena") requires
8 American International Specialty Lines Insurance Company
9 ("AISLIC") to produce, on or before April 8, 2008,[1] all
10 documents for claims made by Access Claims to AISLIC
11 with respect "a case known as Dias v. Coleman. . . "  A
12 true and correct copy of the Subpoena is attached hereto
13 as Exhibit "A."  The Subpoena should be quashed for at
14 least the following three (3) reasons:

15     1.  The  Subpoena  demands  protected  settlement
16 materials;

17     2.  The  Subpoena  demands  protected  mediation
18 materials; and

19     3.  The Subpoena demands materials protected by
20 F.R.C.P. 26 and the work product doctrine.

21                  **STATEMENT OF RELEVANT FACTS**

22     The Plaintiff, Lincoln General Insurance Company
23 ("Lincoln"), is an insurance company writing automobile
24 policies  in  multiple  states,  including  California.

25 ─────────────────────
[1] By agreement of the parties and AISLIC, all objections or
26 motions related to the Subpoena must be filed on or before
April 8, 2008.  Additionally, attached hereto as Exhibit "B"
27 is the Affidavit of Jessica F. Pardi, counsel for Access
Claims, stating that the parties attempted to resolve this
28 dispute without Court intervention but were unable to do so.

                                   Defendant's Brief in
                                   Support of Motion to
                     2             Quash Subpoena

1  (Lincoln Complaint filed on April 9, 2007 (the
2  "Complaint"), ¶¶ 1, 7). Access Claims is a claims
3  administrator that has done business in several states.
4  (Id. at ¶¶ 2, 6). Pursuant to a claims service
5  agreement, Access Claims administered claims for
6  Lincoln's California insurance policies. (Id. at ¶ 6).

7      Lincoln filed this lawsuit seeking indemnification
8  from Access Claims for a payment in excess of policy
9  limits Lincoln made as part of a voluntary settlement of
10 a third-party claimant's personal injury claim. (Id. at
11 ¶¶ 9, 13, 23). That claimant, Diana Dias ("Dias" and
12 the "Dias Claim"), alleged that Lincoln (through Access
13 Claims) failed to respond appropriately to a time-
14 limited demand for policy limits, thereby "opening" such
15 limits. (Id. at ¶ 12).

16     Lincoln, without the participation or approval of
17 Access Claims, voluntarily chose to settle the Dias
18 Claim for $3.8 million and now has sued Access Claims
19 seeking indemnification. (Id. at ¶¶ 16, 18, 23, 29,
20 34).

21     AISLIC provided errors and omissions insurance
22 coverage to Access Insurance Holdings, Inc. ("Access
23 Holdings"), and its subsidiaries, including Access
24 Claims, during some or all of 2004 and 2005 (Deposition
25 of Michael McMenamin[2] (the "McMenamin Depo."), p. 78;
26 Affidavit of Michael H. Meadows (the "Meadows

27

28 [2] Relevant excerpts of the Deposition of Michael McMenamin
are attached hereto as Exhibit "C."

Defendant's Brief in
Support of Motion to
3    Quash Subpoena

1  Affidavit"), ¶ 2, attached hereto as Exhibit "D").   When
2  Lincoln demanded reimbursement for Lincoln's voluntary
3  $3.8 million payment for the Dias Claim, Access Claims
4  notified AISLIC of Lincoln's demand.  (*Id.* at p. 77 and
5  ¶  4).    AISLIC   determined   Lincoln's   demand   for
6  indemnification did not constitute a claim under the
7  AISLIC Policy and denied coverage for the Dias Claim.
8  (Deposition of Michael Meadows[3] (the "Meadows Depo."),
9  p. 215.

10     On February 21, 2006, Access Claims and related
11 entities  (the  "Access  Entities")  filed  a  Complaint
12 against AISLIC in a New York state trial court seeking
13 declaratory  relief  and  damages  (the  "Dec  Action").
14 (Meadows Aff., ¶ 7; *see also* Affidavit of Lewis E.
15 Hassett (the "Hassett Aff."), ¶ 2, attached hereto as
16 Exhibit "F").

17     To resolve the Dec Action, Access Claims and AISLIC
18 participated    in    a    confidential    mediation    (the
19 "Confidential Mediation") in New York and entered into a
20 confidential  settlement  agreement  (the  "Confidential
21 Settlement Agreement").   (McMenamin Depo., pp. 79-80;
22 Meadows Depo., pp. 215-16; Meadows Aff., ¶ 8; Hassett
23 Aff., ¶ 7).   The parties expressly agreed that all
24 materials and information regarding or relating to the
25 Confidential Mediation and the Confidential Settlement
26 Agreement  would  remain  confidential  and  be  protected

27

28 [3] Relevant excerpts of the Deposition of Michael Meadows are attached hereto as Exhibit "E."

Defendant's Brief in
Support of Motion to
Quash Subpoena

4

1  from disclosure.   (Meadows Aff., ¶ 9; Hassett Aff., ¶ 4
2  and Exh. 1).   The parties to the Confidential Mediation
3  signed a non-disclosure agreement (the "Non-Disclosure
4  Agreement"), and the Confidential Settlement Agreement
5  contains an **express** confidentiality provision.   (Meadows
6  Aff., ¶ 10).   AISLIC, located in New York, has objected
7  to the Subpoena (the "AISLIC Objection").   A true and
8  correct copy of the AISLIC Objection is attached as Exh.
9  B to the Affidavit of Jessica F. Pardi (the "Pardi
10 Aff.").

11      The Subpoena seeks the following:

12          [d]ocuments for all claims made by Access
            Claims Administrators, Inc. from 2003 to
13          the present relating to work performed by
            Access Claims Administrators, Inc. on a
14          case known as *Dias v. Coleman*, San Joaquin
15          County Superior Court Case No. CV023230,
            and claims for injuries or damages relating
16          to that lawsuit.
17

18 The information demanded in the Subpoena is vague and
19 overly broad and is not limited to or in any way
20 relevant to insurance benefits, if any, paid for the
21 Dias Claim.

22      As worded, the Subpoena demands work product
23 materials, the Confidential Settlement Agreement,
24 materials pertaining to the Confidential Mediation, and
25 protected communications and negotiations between Access
26 and AISLIC regarding the E&O Claim, the Confidential
27 Settlement Agreement and the Confidential Mediation
28 (collectively, the "Protected Materials").

Defendant's Brief in
Support of Motion to
Quash Subpoena

1  **ARGUMENT AND CITATION OF AUTHORITY**

2  Pursuant to Fed. R. Civ. Pro. 45(c)(3)(A)(iii)
3  ("Rule 45"), this Court shall quash a subpoena upon the
4  filing of a timely motion when the subpoena requires the
5  disclosure of privileged or other protected matter and
6  no exception or waiver applies.   A federal court
7  exercising diversity jurisdiction applies state law to
8  privileges and protections afforded under the laws of
9  different states but applies federal law to issues
10 relating to work product immunity.   *Employers Ins. of*
11 *Wausau v. Calif. Water Serv. Co.*, 2007 WL 2947423 (N.D.
12 Cal)[4]; *see also* Fed. R. Evid. 501; *Liew v. Breen*, 640
13 F.2d 1046, 1049 (9th Cir. 1981); *In re California Public*
14 *Utilities Com'n*, 892 F.2d 778, 781 (9th Cir. 1989).

15 Lincoln filed this lawsuit in California.   The
16 mediation occurred in New York, and AISLIC and the
17 materials demanded in the Subpoena are located in New
18 York.   (AISLIC Objection, p. 2; Meadows Aff., ¶ 8).   A
19 federal court sitting in diversity applies the choice of
20 law rules of the forum state.   *Klaxon v. Stentnor Elec.*
21 *Mfg. Co.*, 313 U.S. 487 (1941).   California applies a
22 governmental interest analysis and determines choice of
23 law based upon the relative commitment of the relevant
24 states to the laws at issue.   *Castro v. Budget Rent-A-*
25 *Car Syst., Inc.*, 154 Cal. App. 4th 1162, 1179 (2007).
26 Because the laws of New York and California provide

27 ─────────────────
28 [4] Copies of all slip opinions cited herein are attached
   hereto as Exhibit "G."

Defendant's Brief in
Support of Motion to
Quash Subpoena

1  similar stringent protection for settlement and
2  mediation materials, we have examined both herein.
3  Given the similarity in law, this Court need not decide
4  which state's laws apply.

5  **1. The Subpoena demands protected settlement**
6  **information.**

7  **(a) All information and materials regarding**
8  **or relating to settlement communications or the**
9  **Confidential Settlement Agreement are protected**
10  **under California law.**

11  The Subpoena demands information related to the
12  Confidential Settlement Agreement and the mediation and
13  communications underlying the Confidential Settlement
14  Agreement.  All of these materials are protected from
15  disclosure under California law.  *Hinshaw, Winkler,*
16  *Draa, Marsh & Still v. Superior Court*, 51 Cal. App. 4th
17  233, 239 (1996).  Indeed, a private settlement agreement
18  is afforded at least as much privacy protection as a
19  bank account or tax information.  *Id.* at 241.

20  The California Court of Appeals' decision in *Hinshaw*
21  is directly on point.  *Hinshaw* is a legal malpractice
22  action wherein plaintiffs sued their prior counsel after
23  dismissal of plaintiffs' claims in an underlying
24  lawsuit.  *Id.* at 237.  As part of their malpractice
25  action, Plaintiffs sought information regarding
26  confidential settlements entered into by other
27  plaintiffs (their former co-plaintiffs) in the
28  underlying lawsuits.  *Id.*  After considering the public

Defendant's Brief in
Support of Motion to
7     Quash Subpoena

1  policy of California favoring settlements, the expressed
2  desire to maintain confidentiality, and the speculative
3  rationale of plaintiffs in seeking such information, the
4  *Hinshaw* Court found that such confidential settlement
5  agreements should be protected from disclosure. *Id.* at
6  242.

7         Here, as in *Hinshaw*, Plaintiff seeks information
8  related to and/or constituting a confidential settlement
9  agreement entered into between Access Claims and AISLIC.
10 Such information is protected under the confidentiality
11 provision entered into by AISLIC and Access Claims as
12 part of the Confidential Settlement Agreement.  (Meadows
13 Aff., ¶ 10; Hassett Aff., ¶ 7; Meadows Depo., pp. 215-
14 16).  Pursuant to the agreement, neither party may
15 disclose the contents of the Confidential Settlement
16 Agreement, nor any of the information exchanged or
17 discussed in any negotiations surrounding such
18 agreement.  (Meadows Aff., ¶ 10; Hassett Aff., ¶ 7).

19        *Hinshaw* relies in part upon the right to privacy
20 found in California Constitution article I, section 1.
21 While this fundamental right has not been extended
22 expressly to corporations, California courts have held
23 that corporations do indeed have privacy rights.  *Ameri-*
24 *Medical Corp. v. Workers' Compensation Appeals Board*, 42
25 Cal. App. 4th 1260, 1287-88 (1996) (recognizing a
26 corporation's right to privacy).  Additionally, the
27 strength of a corporation's privacy right is dependent
28 upon the circumstances of the information to be

Defendant's Brief in
Support of Motion to
8          Quash Subpoena

1 protected.   *Id*.   Given   that   the   Subpoena   seeks
2 confidential   insurance,   settlement   and   mediation
3 information, Access Claims' privacy interest is a strong
4 one.

5    The parties have maintained the protections accorded
6 the   Confidential   Settlement   Agreement   and   materials
7 related thereto and are therefore entitled to have the
8 Subpoena   quashed   in   accordance   with   the   laws   of
9 California.

10    **(b)  All information and materials regarding**
11    **or relating to settlement communications or the**
12    **Confidential Settlement Agreement are protected**
13    **under New York law.**

14    New   York,   like   California,   has   a   strong   public
15 policy    encouraging    and    protecting    settlement
16 communications   such   as   the   Confidential   Settlement
17 Agreement and materials related thereto.  *Crow-Crimmins-*
18 *Wolff & Munier v. County of Westchester*, 126 A.D.2d 696,
19 697 (N.Y. 1987) ("Actions taken and observations made
20 for  the  stated  purpose  of  arriving  at  a  settlement
21 agreement,  and  expressly  not  for  litigation,  which
22 actions would not have been accomplished except in a
23 mutual attempt to reach a settlement, should likewise
24 generally be protected by the same public policy of
25 encouraging attempts at settlement.");  *Randall Elec.,*
26 *Inc. v. New York*, 150 A.D.2d 875, 876 (N.Y. 1989)
27 (same).   New York law protects from discovery not only
28 the  Confidential  Settlement  Agreement,  but  also  all

                                        Defendant's Brief in
                                        Support of Motion to
                                        Quash Subpoena

1  materials constituting or evidencing "actions taken and
2  observations made" in anticipation of or in the course
3  of a settlement. *Id.*

4  Indeed, New York law protects from discovery
5  communications made by an insured, such as Access
6  Claims, to its liability insurer:

7  It is of the greatest importance that an
8  insured be encouraged to make complete and
   candid disclosure to his liability insurer.
9  The purpose is just as significant as in
   the case of the attorney-client
10 relationship in the absence of insurance.

11 *Kandel v. Tocher*, 22 A.D.2d 513, 518 (N.Y. 1965)
12 (granting protection order for communications from
13 insured to insurer).

14 The Subpoena must be quashed to protect from
15 disclosure insured-insurer communications, the
16 Confidential Settlement Agreement and all materials
17 related thereto.

18 **2.  The Subpoena demands protected mediation**
19 **materials.**

20 **(a)  All information and materials regarding**
21 **or relating to the Confidential Mediation are**
22 **protected under California law.**

23 To resolve the Dec Action, Access Claims and AISLIC
24 participated in the Confidential Mediation which was
25 expressly governed by the Non-Disclosure Agreement
26 protecting from discovery all materials related to the
27 Confidential Mediation. The Non-Disclosure Agreement
28 accords with California state law protection of

Defendant's Brief in
Support of Motion to
Quash Subpoena

1 mediation materials.   Pursuant to such law, neither
2 evidence of any oral communications nor any writing
3 "that is prepared for the purpose of, in the course of,
4 or pursuant to, a mediation or a mediation consultation
5 is admissible or subject to discovery, and disclosure of
6 the writing shall not be compelled, in any civil
7 action...."   CAL. EVID. CODE §1119 (2008); *see also*
8 *Wimsatt v. Sup. Ct.*, 152 Cal. App. 4th 137 (2007)
9 (discussing strict application of mediation
10 confidentiality and protection of all materials,
11 including e-mails, briefs and all communications related
12 to a mediation).

13     The Subpoena should be quashed and Lincoln prevented
14 from discovering communications or writings created
15 during or in conjunction with the Confidential
16 Mediation.

17          **(b)  All information and materials regarding**
18            **or relating to the Confidential Mediation are**
19            **protected under New York law.**

20     Like California, New York law also enforces the Non-
21 Disclosure Agreement and protects information related to
22 or regarding mediations.   Indeed, "[i]t is well settled
23 that if discussions are had  between parties pursuant to
24 an agreement that those discussions are off the record,
25 'then no discovery with respect to those discussions may
26 be had'."   *Crow-Crimmins*, 126 A.D.2d at 697, quoting
27 *Paine, Webber, Jackson & Curtis v. Alanthus Corp.*, 82
28 A.D.2d 877 (N.Y. 1981).

Defendant's Brief in
Support of Motion to
11        Quash Subpoena

1    All communications and materials related to the
2 Confidential Mediation are protected not only by the
3 express terms of the Non-Disclosure Agreement but also
4 by New York's public policy protecting settlement
5 communications.   *Randall Elec., Inc.*, 150 A.D.2d at 876
6 (denying motion to compel discovery of materials related
7 to "off the record" settlement negotiations).

8    The Subpoena must be quashed in accordance with New
9 York law protecting mediation materials.

10         **3.   The Subpoena demands materials protected by**
11      **F.R.C.P. 26 and the work product doctrine.**

12    The materials in AISLIC's file were prepared by
13 Access Claims and/or AISLIC in anticipation of and/or
14 preparation for Lincoln's threatened lawsuit (i.e. the
15 instant action) and are therefore protected under
16 Federal Rule of Civil Procedure 26 ("Rule 26") and the
17 work product doctrine.   Fed. R. Civ. P. 26(b)(3);
18 *Employers Ins. of Wausau v. Calif. Water Serv. Co.*, 2007
19 WL 2947423 (N.D. Cal. 2007).   All of the materials sent
20 by Access Claims to AISLIC were sent after Lincoln made
21 its claim for reimbursement and threatened to sue Access
22 Claims for indemnification.     Accordingly, all
23 communications between Access Claims and AISLIC were
24 made in anticipation of and/or in preparation for this
25 action and are protected from discovery.[5]   *Id.*

26 _____

27 [5] Any materials Access Claims sent which are not protected
from discovery (e.g. a copy of Access Claims' file for the
28 Dias Claim) have already been produced to Lincoln by Access
Claims.   (Pardi Aff., ¶ 7).   Additionally, the facts that

Defendant's Brief in
Support of Motion to
Quash Subpoena

1    Rule 26 and the work product doctrine protect
2  materials prepared by a party or by counsel in
3  anticipation of litigation even when such litigation is
4  a "mere contingency" at the time the materials are
5  prepared.    *See generally Conner Peripherals, Inc. v.*
6  *Western Digital Corp.*, 1993 WL 726815 (N.D. Cal.), 31
7  U.S.P.Q.2d 2042 (1993). Because the claims underlying
8  both the Dec Action and this lawsuit existed at the time
9  of the creation of the materials demanded in the
10 Subpoena, all such materials created by the parties or
11 their counsel in anticipation of litigation are
12 protected, and the Subpoena should be quashed.

13    Finally, work product protection has been expressly
14 applied to an insurer's claim materials.    *Railroad*
15 *Salvage of Conn., Inc. v. Japan Freight Consolidators*
16 *(U.S.A.), Inc.*, 97 F.R.D. 37, 41 (E.D.N.Y. 1983)
17 (holding communications between insured and its
18 liability insurer protected from disclosure), *aff'd*, 779
19 F.2d 38 (2nd Cir. 1985); *Brown v. Nicholson*, 2007 WL
20 1237931 (E.D. Pa.) (same). Accordingly, AISLIC's file
21 regarding the E&O Claim is expressly protected from
22 discovery by the work product doctrine, and the Subpoena
23 must be quashed.

24
25
26

27 Access Claims made the E&O Claim and AISLIC denied the E&O
28 Claim have been attested to in written and deposition
   discovery.

Defendant's Brief in
Support of Motion to
13        Quash Subpoena

## CONCLUSION

The Subpoena should be quashed for at least the following three (3) reasons:

1. The Subpoena demands protected settlement materials;

2. The Subpoena demands protected mediation materials; and

3. The Subpoena demands materials protected by F.R.C.P. 26 and the work product doctrine.

This 8th day of April, 2008.

                                   MORRIS, MANNING & MARTIN, LLP


                                   _____
                                   Lewis E. Hassett
                                   Georgia Bar No. 336140
                                   Jessica F. Pardi
                                   Georgia Bar No. 561204
                                   Benjamin T. Erwin
                                   Georgia Bar No. 143055

                                   Attorneys for Access Claims
                                   Administrators, Inc.

1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
Phone: (404) 233-7000
Fax: (404) 365-9532

OF COUNSEL:

Sanford L. Michelman, Esq., SBN 179702
Mona Z. Hanna, Esq., SBN 131439
Marc R. Jacobs, Esq., SBN 185924
MICHELMAN & ROBINSON, LLP
4 Hutton Centre Drive, Suite 300

                                   Defendant's Brief in
                                   Support of Motion to
                14                 Quash Subpoena

Santa Ana, California 92707
Telephone:   (714) 557-7990;
Facsimile:   (714) 557-7991

Robert E. Davies, Esq. (California Bar No. 106810)
CAULFIELD, DAVIES & DONAHUE LLP
P.O. Box 277010
Sacramento, CA 95827-7010
Telephone: (916) 817-2900
Facsimile:   (916) 817-2644

Defendant's Brief in
Support of Motion to
Quash Subpoena

# Exhibit A

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

## UNITED STATES DISTRICT COURT

|                 EASTERN                 | DISTRICT OF |     CALIFORNIA     |
|-----------------------------------------|-------------|--------------------|

LINCOLN GENERAL INSURANCE COMPANY

V.

ACCESS CLAIMS ADMINISTRATORS

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]   2:07-cv-01015-LKK-EFB

TO:   CUSTODIAN OF RECORDS FOR AMERICAN
        INTERNATIONAL SPECIALTY LINES INSURANCE
        COMPANY

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
    testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | **DATE AND TIME** |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
    in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
    place, date, and time specified below (list documents or objects):

Documents for all claims made by Access Claims Administrators, Inc. from 2003 to the present relating to work
performed by Access Claims Administrators, Inc. on a case known as Dias v. Coleman, San Joaquin County Supeiror
Court Case No. CV023230, and claims for injuries or damages relating to that lawsuit.

| PLACE   Ryan Mercaldo & Worthington LLP<br>3636 Nobel Drive, Suite 200, San Diego, CA 92122 | DATE AND TIME<br>4/9/2008 4:00 pm |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* , Attorney for Plaintiff | March 19, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Norman A. Ryan
Ryan Mercaldo & Worthington LLP, 3636 Nobel Drive, Suite 200, San Diego, CA 92122

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    **DATE**

                    **SIGNATURE OF SERVER**

                    **ADDRESS OF SERVER**

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

Norman A. Ryan, Esq. (CSB No. 116175)
Marco B. Mercaldo, Esq. (CSB No. 197902)
Brian P. Worthington, Esq. (CSB No. 179590)
RYAN MERCALDO & WORTHINGTON LLP
3636 Nobel Drive, Suite 200
San Diego, California 92122
(858)455-8700; Fax (858)455-8701
Attorneys for Plaintiff, LINCOLN GENERAL INSURANCE COMPANY

## UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

Case Name  :  Lincoln General Insurance Company v. Access Claims Administrators, Inc., et al.
Case No. :  2:07-cv-01015-LKK-EFB

### PROOF OF SERVICE

    I, the undersigned, declare that:  I am over the age of 18 years and not a party to the case; I am employed in the County of San Diego, California, where the mailing occurs and my business address is 3636 Nobel Drive, Suite 200, San Diego, California, 92122.

    On March 19, 2008, I served the following document(s):

### SUBPOENA IN A CIVIL CASE
### [Custodian of Records for American International Specialty Lines Insurance Company]

[ ]    **BY FACSIMILE TRANSMISSION** from fax number (858)455-8701 to the fax numbers listed on the attached attorney list.

[ ]    **BY ELECTRONIC FILING/SERVICE.**  By electronically filing the foregoing with the Clerk of the District Court using its ECF system which electronically notifies all parties.

[X]    **BY U.S. MAIL:**  I placed a true copy in a sealed envelope to the parties stated above and, pursuant to this business' usual practice for collection and processing of mail, deposited on the same day in a collection box regularly maintained by U.S. Postal Service.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on March 19, 2008.

                              _____
                                Janice R. Harlos

## SERVICE LIST

| | |
|---|---|
| Sanford L. Michelman, Esq.<br>Mona Z. Hanna, Esq.<br>Marc R. Jacobs, Esq.<br>MICHELMAN & ROBINSON<br>15760 Ventura Boulevard, 5th Floor<br>Encino, California 91436<br>(818)783-5530; Fax (818)783-5507<br>Co-Counsel for Defendant, ACCESS<br>CLAIMS ADMINISTRATORS, INC. | Robert E. Davies, Esq.<br>Rebecca Weinstein-Hamilton, Esq.<br>CAULFIELD, DAVIES & DONAHUE<br>Post Office Box 277010<br>Sacramento, California 95827-7010<br>(916)817-2900; Fax (916)817-2644<br>Co-Counsel for Defendant, ACCESS<br>CLAIMS ADMINISTRATORS, INC. |
| Lewis E. Hassett, Esq.<br>Jessica F. Pardi, Esq.<br>Amanda B. Speed, Esq.<br>MORRIS, MANNING & MARTIN<br>1600 Atlanta Financial Center<br>3343 Peachtree Road, NE<br>Atlanta, Georgia 30326<br>(404)233-7000; Fax (404)365-9532<br>Co-Counsel for Defendant, ACCESS<br>CLAIMS ADMINISTRATORS, INC. | Steven W. Zoffer, Esq.<br>DICKIE, McCAMEY & CHILCOTE<br>Two PPG Place, Suite 400<br>Pittsburgh, Pennsylvania 15222-5402<br>(412)392-5492; Fax (412)392-5367<br>Co-Counsel for LINCOLN GENERAL<br>INSURANCE COMPANY |

Rev. 12/11/07

# Exhibit B

1  Mona Z. Hanna, Esq., SBN 131439
2  **MICHELMAN & ROBINSON, LLP**
   4 Hutton Centre Drive, Suite 300
3  Santa Ana, California 92707
4  Telephone: (714) 557-7990
   Facsimile: (714) 557-7991
5
   Robert E. Davies, Esq., SBN 106810
6  **CAULFIELD, DAVIES & DONAHUE LLP**
7  P.O. Box 277010
   Sacramento, CA 95827-7010
8  Telephone: (916) 817-2900
9  Facsimile: (916) 817-2644

10 Lewis E. Hassett, Esq.
11 Jessica F. Pardi, Esq.
   **MORRIS, MANNING & MARTIN, LLP**
12 1600 Atlanta Financial Center
13 3343 Peachtree Road
   Atlanta, Georgia 30326
14 Telephone: (404) 233-7000
15 Facsimile: (404) 365-9532

16 **Attorneys for Defendant:**
17 **ACCESS CLAIMS ADMINISTRATORS, INC.**

18              UNITED STATES DISTRICT COURT
19             EASTERN DISTRICT OF CALIFORNIA
                   SACRAMENTO DIVISION
20
   LINCOLN GENERAL INSURANCE ) Case No. 2:07-cv-01015-LKK-
21 COMPANY,                   ) EFB
22              Plaintiff,    )
                              )
23     v.                    ) **AFFIDAVIT OF JESSICA F.**
                              ) **PARDI**
24 ACCESS CLAIMS              )
25 ADMINISTRATORS, INC., and )
26 DOES 1 through 75,         )
   inclusive, et al.,         )
27                            ) Complaint Filed: APRIL 9,
28              Defendants.   ) 2007
   ─────────────────────────
                              Affidavit of Jessica F.
                              Pardi
                   1

1      Personally appeared before the undersigned attesting
2   officer, duly authorized to administer oaths, Jessica F.
3   Pardi, who, after being duly sworn, under oath says that
4   she is over the age of eighteen (18) years, has personal
5   knowledge of the facts set forth in this Affidavit, and
6   makes this Affidavit for all purposes authorized by law.

7                                1.

8      I submit this Affidavit in support of Defendant's
9   Motion to Quash Subpoena Duces Tecum to American
10  International Specialty Lines Insurance Company (the
11  "Subpoena").

12                               2.

13     I am a member in good standing of the State Bar of
14  Georgia, and I am admitted to practice in this Court.

15                               3.

16     I am a partner of the law firm Morris, Manning &
17  Martin, LLP and counsel of record to Defendant Access
18  Claims Administrators, Inc. in the litigation captioned
19  above currently pending in the United States District
20  Court for the Eastern District of California and the
21  subject of this Declaration (the "Action").

22                               4.

23     On February 27 and 28, 2008, I personally met and
24  conferred with Mr. Brian P. Worthington and Mr.
25  Frederick W. Bode, III, counsel for Plaintiff, Lincoln
26  General Insurance Company, in an attempt to resolve all
27  differences regarding the Subpoena. On March 11, 2008,
28  I sent to Brian Worthington a letter confirming our

                                            Affidavit of Jessica F.
                              2             Pardi

1  discussions regarding the Subpoena (the "March 11
2  Letter"). A true and correct copy of that
3  correspondence is attached hereto as Exhibit 1.

4                         5.

5      The parties have been unable to resolve their
6  differences in regards to the Subpoena.

7                         6.

8      On or about March 31, 2008, Thomas F. Breen, counsel
9  to American International Specialty Lines Insurance
10 Company, objected to the Subpoena. A true and correct
11 copy of these objections as received by this office is
12 attached hereto as Exhibit 2.

13                        7.

14     Any materials Access Claims sent to AISLIC which are
15 not protected from discovery (e.g. Access Claims' file
16 for the Dias Claim) have already been produced to
17 Lincoln by Access Claims.

18     FURTHER AFFIANT SAYETH NAUGHT.

19
20                         _Jessica J. Pardi_
                           JESSICA F. PARDI
21
22 Sworn to an subscribed before me
23 this  8  day of  April , 2008.

24
25
26 Notary Public
27 My commission expires  7/11/2011
28     (NOTARY SEAL)

                              Affidavit of Jessica F.
                              Pardi

                              3

# Exhibit 1

# MM MORRIS, MANNING & MARTIN, LLP
### ATTORNEYS AT LAW

March 11, 2008

**Jessica F. Pardi**
404-504-7662
jfp@mmmlaw.com
www.mmmlaw.com

**VIA ELECTRONIC MAIL**

Brian P. Worthington, Esq.
Ryan Mercaldo & Worthington LLP
3636 Nobel Drive, Suite 200
San Diego, California 92122
bworthington@rmwfirm.com

> Re: *Lincoln General Insurance Company v. Access Claims Administrators, Inc.,*
> Case No. 2:07-cv-01015-LKK-EFB in the United States District Court for the
> Eastern District of California, Sacramento Division (the "Litigation")

Dear Brian:

When you were in our offices on February 27 and 28, you, Rick Bode and I discussed the fact that Access Claims was not served with a notice or copy of Lincoln's subpoena on AIG (the "AIG Subpoena). I informed you that I was aware of the AIG Subpoena only because I had just received a call from counsel for AIG.

Counsel for AIG was in the process of requesting AIG's claim file for this matter and was to call me back after he had reviewed such file. Because Access Claims had not been served with or notified of the AIG Subpoena, we agreed that after I had an opportunity to speak with counsel for AIG regarding the contents of their file, you and I would determine a reasonable time for Access Claims to object to the AIG Subpoena if an objection was deemed necessary by Access Claims. AIG's counsel informed me today that AIG is still unable to locate their file on this matter. Accordingly, I have not had the opportunity to discuss with them the contents of their file.

It is my understanding, based upon communications with AIG's counsel today, that Mr. Townsend of your office has now threatened AIG with a motion for contempt if AIG does not provide documents in response to the AIG Subpoena immediately. As of today's date, Lincoln has not served Access Claims with a copy of the AIG Subpoena nor with any notice of service of the AIG Subpoena. Additionally, you and I have never agreed upon a deadline within which Access Claims should file its objections, if any, to the AIG Subpoena. Therefore, any motion for contempt would be premature.

---

| Atlanta | 1600 Atlanta Financial Center | With offices in | Washington, D.C. |
| 404.233.7000 | 3343 Peachtree Road, N.E. | | Charlotte, North Carolina |
| | Atlanta, Georgia 30326-1044 | | |
| | Fax: 404.365.9632 | | |

1911158 v01

MORRIS, MANNING & MARTIN, LLP

Brian P. Worthington, Esq.
Page 2
March 11, 2008


To avoid any confusion, Access Claims does, indeed, intend to object to the production of any documents constituting or evidencing any agreements between Access Claims and AIG which are subject to confidentiality provisions or are irrelevant to the Litigation. I suggest that you serve a copy of the AIG Subpoena on Access Claims as soon as possible and we agree that Access Claims shall have fourteen days thereafter to object.

If you disagree with my understanding of our prior agreement or are unwilling to serve Access Claims with the AIG Subpoena and allow Access Claims fourteen days to object, please let me know immediately.

Sincerely,

MORRIS, MANNING & MARTIN, LLP

Jessica F. Pardi

JFP:at

cc:   Lewis E. Hassett, Esq.

1911158 v01

# Exhibit 2

# D'AMATO & LYNCH, LLP

ATTORNEYS AT LAW

70 PINE STREET

NEW YORK, N.Y. 10270-0110

TELEPHONE 212-269-0927

TELECOPIER: 212-269-3559

WWW.DAMATO-LYNCH.COM

GEORGE G. D'AMATO (2007)
LUKE D. LYNCH (1999)
FOUNDING PARTNERS

LONDON OFFICE
LLOYD'S
ONE LIME STREET
LONDON, EC3M7HA, ENGLAND
TELEPHONE 0207 816 5977
TELECOPIER 0207 816 7257

Thomas F. Breen
(212) 909-2024
TBreen@damato-lynch.com

March 31, 2008

**VIA FACSIMILE:(858) 455-8701
AND U.S. MAIL**
Brian P. Worthington
Ryan Mercaldo & Worthington
3636 Nobel Drive
Suite 200
San Diego, CA 92122

Re: **Non-Party Subpoena**

| | | |
|---|---|---|
| Insured | : | Access Insurance |
| Claimant | : | Lincoln General |
| Policy No. | : | 640-93-54 |
| Claim No. | : | 297-019320 |
| Our File No. | : | 336-74955 |

Dear Mr. Worthington:

We serve as counsel to American International Specialty Lines Insurance Company ("AISLIC") in connection with a re-issued Non-Party Subpoena dated March 19, 2008 (the "Subpoena") served by the Plaintiff in the action styled Lincoln General Insurance Company v. Access Claims Administrators pending in the United States District Court for the Eastern District of California (the "Lincoln General Action"). The return date of the Subpoena is April 9, 2008.

As we discussed on March 26, 2008, counsel for Defendant Access Claims, Jessica Pardi of Morris, Manning & Martin (the "Morris Firm"), intends to file a Motion to Quash the Subpoena. The Morris Firm has instructed AISLIC not to produce the Claim

#293541v1

Brian P. Worthington
March 31, 2008
Page 2

File or the Settlement Agreement between the Defendant and AISLIC until such time as the Court rules on the Motion to Quash. You have agreed, on behalf of Lincoln General, Insurance Company that the requested production of documents from AISLIC be held in abeyance pending a resolution of the Motion to Quash.

Pending the Court's decision on the Motion to Quash, the following are the Objections of AISLIC to the documentation requested in the Subpoena. We object on the grounds that the requested Claim File contains privileged communications, attorney work product documents and other documents that are not reasonably calculated to lead to the discovery of admissible evidence. Also, Ms. Pardi of the Morris Firm has asserted privilege with respect to any communications that the Morris Firm had with AISLIC or AIGDC (its claim organization) regarding the underlying action styled <u>Dias v. Coleman</u> and/or the <u>Lincoln General Action</u>.

Moreover, on or about April 14, 2006, Access Claims commenced a declaratory judgment action (the "<u>Declaratory Judgment Action</u>") against AISLIC in the Supreme Court of the State of New York, County of New York. AISLIC retained defense counsel to defend the <u>Declaratory Judgment Action</u> and, therefore, asserts attorney client privilege with regard to all communications between AISLIC and its defense counsel in the <u>Declaratory Judgment Action</u>.

We further object on the ground that the requested documentation seeks confidential, commercial business records of AISLIC.

Likewise, we object on the ground that the documents requested are beyond the scope of the insurance disclosure required by Rule 26 of the Federal Rules of Civil Procedure ("FRCP"). Similarly, the requested documents can most easily be obtained from the Defendant without the involvement of AISLIC as a Non-Party since the Morris Firm, as counsel for the Defendant, conducted all communications with AISLIC regarding  (1) the underlying action styled <u>Dias v. Coleman</u>, (2) the <u>Declaratory Judgment Action</u>, and (3) the <u>Lincoln General Action</u>.

Lastly, pursuant to Rule 45 of the FRCP, the Non-Party Subpoena should have issued out of the Southern District of New York since the requested documents are located in downtown New York and any non-objectionable documents will be produced from downtown New York. The Non-Party Subpoena issued out of the Eastern District of California and is more than 100 miles from where the documents are located and

#293541v1

Brian P. Worthington
March 31, 2008
Page 3

where non-objectionable documents will be produced.

Very truly yours,

Thomas F. Breen

TFB:nh

cc:     Jessica F. Pardi
        Morris, Manning & Martin, LLP
        1600 Atlanta Financial Center
        3343 Peachtree Road, N.E.
        Atlanta, Georgia 30326

#293541v1

# Exhibit C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

LINCOLN GENERAL INSURANCE )
COMPANY,                    )
                            )
            Plaintiff,      )
                            )      CASE NUMBER
        vs.                 )      2:07-CV-01015-LKK-EFB
                            )
ACCESS CLAIMS               )
ADMINISTRATORS, INC.; and   )
DOES 1 through 75,          )
inclusive, et al.,          )
                            )
            Defendants.     )
_____)

        Deposition of MICHAEL MCMENAMIN, taken on
behalf of the Plaintiff, pursuant to the stipulations
contained herein, in accordance with the Federal Rules
of Civil Procedure, before Kelly D'Amico, Certified
Court Reporter, at 3343 Peachtree Road, N.E., Atlanta,
Georgia, on the 18th day of March, 2008, commencing at
the hour of 10:39 a.m.

                    *   *   *

            D'AMICO GERSHWIN, INC.
            Certified Court Reporters
                11475 West Road
            Roswell, Georgia  30075
                (770) 645-6111

© COPY

```
1    our behalf.
2         Q       What was the E&O carrier's response to
3    that claim?
4         A       At what time?
5         Q       At any time.  What was its first
6    response?  The point when it first responded to the
7    claim, what was its response?
8         A       They denied it.
9         Q       On what grounds?
10        A       Pol- -- claims-made policy, that it was
11   known before the -- the claim was known before the
12   policy incepted.
13        Q       What E&O carrier was that?
14        A       AIG.  I don't know the specific AIG
15   company.  It was probably National Union.
16        Q       Did Access submit an E&O claim to any
17   other E&O carrier?
18        A       I think so, yes.
19        Q       What carrier would that be?
20        A       I believe it would have been Scottsdale
21   Insurance Company at the time.
22        Q       What was the response that Access
23   received from Scottsdale about that claim?
24        A       Late reporting.
25        Q       So they denied coverage?
```

Page 78

```
1         A        Correct.
2         Q        When it first denied coverage based on
3    late reporting, did Access ever communicate with
4    Scottsdale to request any type of reconsideration of
5    that?
6         A        We may have, but I don't recall.
7         Q        At this point in time, has Scottsdale
8    continued in denying the claim based upon late
9    reporting?
10        A        Yes.
11        Q        So is it correct that there's no claim
12   currently open with Scottsdale with regard to the Dias
13   matter?
14        A        That's correct.
15        Q        Has Scottsdale ever paid any money to
16   Access with regard to the Dias matter?
17        A        No.
18                 (Thereupon, an off-the-record discussion
19            was held between plaintiff's counsel.)
20   BY MR. WORTHINGTON:
21        Q        Now, with respect to AIG, you said that
22   they at first -- that they denied based upon it being
23   a claims-made policy; is that correct?
24        A        Well, it was a claims-made policy, but I
25   think the exact denial was because it was late
```

Page 79

1    reporting or outside of their policy term.  I don't

2    know how you want to characterize that.

3         Q       Did Access request that AIG reconsider

4    its coverage denial?

5         A       We had a mediation about it, sure, and we

6    settled.

7         Q       What was the outcome of the settlement?

8         A       It's --

9                 MS. PARDI:  I'm going to object to any

10            questions about that.  It's protected by a

11            confidentiality agreement.

12                MR. WORTHINGTON:  Off the record.

13                (Thereupon, an off-the-record discussion

14            was held.)

15    BY MR. WORTHINGTON:

16         Q       Mr. McMenamin, you talked about the fact

17    that you first became aware of the Dias matter in the

18    first quarter of January 2005; correct?

19         A       Correct.

20         Q       When you first found out about it, did

21    you talk with anybody at Access about whether Access

22    had informed Lincoln about the Dias matter before

23    January of 2005?

24         A       I mean, at the time Lincoln was in our

25    office about on average every two-and-a-half to three

                                                    Page 80

# Exhibit D

1   Mona Z. Hanna, Esq., SBN 131439
2   **MICHELMAN & ROBINSON, LLP**
    4 Hutton Centre Drive, Suite 300
3   Santa Ana, California 92707
    Telephone: (714) 557-7990
4   Facsimile: (714) 557-7991

5
    Robert E. Davies, Esq., SBN 106810
6   **CAULFIELD, DAVIES & DONAHUE LLP**
7   P.O. Box 277010
    Sacramento, CA 95827-7010
8   Telephone: (916) 817-2900
9   Facsimile: (916) 817-2644

10  Lewis E. Hassett, Esq.
11  Jessica F. Pardi, Esq.
    **MORRIS, MANNING & MARTIN, LLP**
12  1600 Atlanta Financial Center
13  3343 Peachtree Road
    Atlanta, Georgia 30326
14  Telephone: (404) 233-7000
15  Facsimile: (404) 365-9532

16  **Attorneys for Defendant:**
17  **ACCESS CLAIMS ADMINISTRATORS, INC.**

18              UNITED STATES DISTRICT COURT
19              EASTERN DISTRICT OF CALIFORNIA
                    SACRAMENTO DIVISION
20
    LINCOLN GENERAL INSURANCE ) Case No. 2:07-cv-01015-LKK-
21  COMPANY,                   ) EFB
                               )
22          Plaintiff,         )
                               )
23      v.                     ) **AFFIDAVIT OF MICHAEL H.**
                               ) **MEADOWS**
24                             )
    ACCESS CLAIMS              )
25  ADMINISTRATORS, INC., and  )
26  DOES 1 through 75,         )
    inclusive, et al.,         )
27                             ) Complaint Filed: APRIL 9,
28          Defendants.        ) 2007

                                    Affidavit of Michael H.
                                    Meadows
                        1

1  Personally appeared before the undersigned attesting
2  officer, duly authorized to administer oaths, Michael H.
3  Meadows, who, after being duly sworn, under oath says
4  that he is over the age of eighteen (18) years, has
5  personal knowledge of the facts set forth in this
6  Affidavit, and makes this Affidavit for all purposes
7  authorized by law.

8                                    1.

9    I am the Senior Vice President and Chief Compliance
10 Officer of Access Claims Administrators, Inc. ("Access
11 Claims").

12                                   2.

13   From March 8, 2004 to March 8, 2005, Access Claims
14 was insured under American International Specialty Lines
15 Insurance Company policy no. 640-93-54 ("AISLIC" and the
16 "AISLIC Policy").

17                                   3.

18   The AISLIC Policy was delivered in Atlanta, Georgia.

19                                   4.

20   Access Claims made a claim under the AISLIC Policy
21 (the "E&O Claim") for Lincoln General Insurance
22 Company's ("Lincoln's") demand for reimbursement of the
23 $3.8 million Lincoln paid David and Diana Dias in
24 settlement of their claim (the "Dias Claim" and the
25 "Dias Settlement") under a policy of insurance issued to
26 Manual Coleman by Lincoln.

27                                   5.

28   AISLIC denied the E&O Claim in its entirety.

Affidavit of Michael H.
Meadows

2

6.

AISLIC also denied other claims made by Access Claims and its affiliates (the "Access Entities") under the AISLIC Policy.

7.

On February 21, 2006, the Access Entities filed a Complaint in New York State Court against AISLIC seeking declaratory relief and damages (the "Dec Action").

8.

To settle the Dec Action, the Access Entities and AISLIC participated in a confidential mediation (the "Confidential Mediation") in New York and entered into a confidential settlement agreement (the "Confidential Settlement Agreement").

9.

The Access Entities and AISLIC expressly agreed that information and materials regarding or relating to the Confidential Mediation and the Confidential Settlement Agreement would remain private and be protected from disclosure.

10.

The Confidential Settlement Agreement contains an express confidentiality provision.

11.

The subject matter of the Confidential Mediation and the Confidential Settlement Agreement encompasses all disputes and outstanding claims under the AISLIC Policy between and among AISLIC and the Access Entities and is

Affidavit of Michael H. Meadows

1 | not limited to or in any way relevant to insurance
2 | benefits, if any, paid to Access Claims for the Dias
3 | Claim.

4 |                12.

5 |     None of the Access Entities or AISLIC has ever
6 | waived the confidentiality of the Confidential Mediation
7 | of the Confidential Settlement Agreement.

8 |

9 |     FURTHER AFFIANT SAYETH NAUGHT.

10 |

11 |

12 |                                                 _____
                                                MICHAEL H. MEADOWS

13 |

14 | Sworn to an subscribed before me
15 | this _8th_ day of _April_ , 2008.
16 | _Tamara C. Baily_
17 | Notary Public
18 | My commission expires: _12/8/2011_
19 |     (NOTARIAL SEAL)

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

                                           Affidavit of Michael H.
                                           Meadows

# Exhibit E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | | |
|---|---|---|
| LINCOLN GENERAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NUMBER |
| vs. | ) | 2:07-CV-01015-LKK-EFB |
| | ) | |
| ACCESS CLAIMS | ) | |
| ADMINISTRATORS, INC.; and | ) | |
| DOES 1 through 75, | ) | |
| inclusive, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Ⓒ**COPY**

30(b)(6) Deposition of Access Claims
Administrators, Inc., MICHAEL MEADOWS, taken on
behalf of the Plaintiff, pursuant to the
stipulations contained herein, in accordance with
the Federal Rules of Civil Procedure, before
Thomas R. Brezina, Certified Court Reporter, at
3343 Peachtree Road, N.E., Atlanta, Georgia, on
the 27th day of February, 2008, commencing at the
hour of 9:03 a.m.

\* \* \*

D'AMICO GERSHWIN, INC.
Certified Court Reporters
11475 West Road
Roswell, Georgia  30075
(770) 645-6111

```
 1    either of the mediations?

 2         A    Yes.

 3         Q    What was the E and O carrier's response to

 4    that request, if any?

 5         A    There were a couple of responses that I

 6    recall.  There may have been other facets of the

 7    responses.  My recollection is that it's -- they

 8    didn't consider it a formal claim yet.

 9         Q    Did they say why they didn't consider it a

10    formal claim yet?

11         A    I don't recall what was behind their

12    comment other than the comment was they didn't

13    consider it a claim yet, and another comment that came

14    back was that they were evaluating it but specifically

15    said they would not send anyone to the mediation.

16         Q    At any point after that did the E and O

17    carrier ever advise that they did consider it a claim?

18         A    I don't recall.

19         Q    Did Access Claims' E and O carrier ever pay

20    any funds to Access Claims with regard to the Dias

21    matter?

22              MS. PARDI:  Objection to form.

23              THE WITNESS:  There was a mediation between

24         an E and O carrier for Access Claims

25         Administrators and Access Claims Administrators,
```

Page 215

```
 1              and the -- that was a mediation, and all of that
 2              is --
 3                   MS. PARDI:  I'm just going to interrupt
 4              you --
 5                   THE WITNESS:  -- confidential.
 6                   MS. PARDI:  -- and remind you that that's
 7              confidential.  Sorry.
 8    BY MR. WORTHINGTON:
 9         Q     What part is confidential?
10         A     My understanding is that everything with
11    regards to it is confidential, from what was discussed
12    and what the outcome was.
13         Q     Is it confidential through a signed
14    agreement between Access and the E and O carrier?
15         A     My recollection is that it is.
16                   MS. PARDI:  And I will just let you know
17              that there is a confidentiality agreement in
18              place on communications between AIG and Access
19              Claims with regard to an agreement made about
20              their E and O policy, which may or may not affect
21              -- which may or may not involve in any way the
22              Dias claim.
23                   MR. WORTHINGTON:  Let me see if I got that
24              right.  You're saying that there's a
25              confidentiality provision in effect between AIG
                                                   Page 216
```

# Exhibit F

1  Mona Z. Hanna, Esq., SBN 131439
2  **MICHELMAN & ROBINSON, LLP**
   4 Hutton Centre Drive, Suite 300
3  Santa Ana, California 92707
4  Telephone: (714) 557-7990
   Facsimile: (714) 557-7991
5
   Robert E. Davies, Esq., SBN 106810
6  **CAULFIELD, DAVIES & DONAHUE LLP**
7  P.O. Box 277010
   Sacramento, CA 95827-7010
8  Telephone: (916) 817-2900
9  Facsimile: (916) 817-2644

10 Lewis E. Hassett, Esq.
11 Jessica F. Pardi, Esq.
   **MORRIS, MANNING & MARTIN, LLP**
12 1600 Atlanta Financial Center
13 3343 Peachtree Road
   Atlanta, Georgia 30326
14 Telephone: (404) 233-7000
15 Facsimile: (404) 365-9532

16 **Attorneys for Defendant:**
17 **ACCESS CLAIMS ADMINISTRATORS, INC.**

18                **UNITED STATES DISTRICT COURT**
19              **EASTERN DISTRICT OF CALIFORNIA**
                     **SACRAMENTO DIVISION**
20
   LINCOLN GENERAL INSURANCE ) Case No. 2:07-cv-01015-LKK-
21 COMPANY,                    ) EFB
22             Plaintiff,      )
                               )
23    v.                       ) **AFFIDAVIT OF LEWIS E.**
                               ) **HASSETT**
24 ACCESS CLAIMS              )
25 ADMINISTRATORS, INC., and )
26 DOES 1 through 75,          )
   inclusive, et al.,          )
27                             ) Complaint Filed: APRIL 9,
28             Defendants.     ) 2007

                              Affidavit of Lewis E.
                              Hassett
                    1

1   Personally appeared before the undersigned attesting
2  officer, duly authorized to administer oaths, Lewis E.
3  Hassett, who, after being duly sworn, under oath says
4  that he is over the age of eighteen (18) years, has
5  personal knowledge of the facts set forth in this
6  Affidavit, and makes this Affidavit for all purposes
7  authorized by law.

8                              1.

9   I am a partner at the law firm of Morris, Manning &
10  Martin, LLP ("Morris, Manning").

11                             2.

12   Morris, Manning represented Access Claims
13  Administrators, Inc. ("Access Claims") and affiliated
14  entities (collectively the "Access Entities) in a
15  declaratory judgment action against American
16  International Specialty Lines Insurance Company
17  ("AISLIC") filed on or about February 21, 2006, in New
18  York State Court (the "Dec Action").

19                             3.

20   The Dec Action was settled at a confidential
21  mediation (the "Confidential Mediation") held in New
22  York on August 30, 2006.

23                             4.

24   The Confidential Mediation and all information
25  related thereto is protected from disclosure by
26  agreement of the parties (the "Non-Disclosure
27  Agreement"), a true and correct copy of which is
28  attached hereto as Exhibit 1.

                                    Affidavit of Lewis E.
                                    Hassett
                        2

5.

I signed the Non-Disclosure Agreement at the Confidential Mediation as counsel for Access Claims.

6.

The parties have not waived any of the terms of the Non-Disclosure Agreement.

7.

The settlement agreed upon at the Confidential Mediation was memorialized in a settlement agreement containing an express confidentiality provision and a New York choice of law provision (the "Confidential Settlement Agreement").

8.

The parties have at all times protected the Confidential Settlement Agreement from disclosure.

9.

The subject matter of the Confidential Mediation and the Confidential Settlement Agreement encompasses all disputes and outstanding claims under the AISLIC Policy between and among AISLIC and the Access Entities and is not limited to the Dias Claim.

10.

None of the Access Entities or AISLIC has ever waived the confidentiality of the Confidential Mediation of the Confidential Settlement Agreement.

Affidavit of Lewis E. Hassett

3

1    FURTHER AFFIANT SAYETH NAUGHT.

2

3
     _____
4              LEWIS E. HASSETT

5    Sworn to an subscribed before me

6    this 8th day of April , 2008.

7    _____

8    Notary Public GEORGIA

9    My commission expires: 7/7/2011

10       (NOTARIAL SEAL)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                Affidavit of Lewis E.
                                Hassett
                        4

# Exhibit 1

# JAMS
# Mediation
# Agreement

**Case Name:** Access Claims Administrators, Inc. vs. AISLIC
**JAMS Ref. No.:** 1420016696
**Panelist:** Hon. Guy J. Mangano (Ret.)

## I. Participants and Procedure.

The parties, and if they desire, their representatives are invited to attend mediation sessions. No one else may attend without the permission of the parties and the consent of the mediator.

During the session, the mediator may have joint and separate meetings with the parties and their counsel. If a party informs the mediator that information is being conveyed to the mediator in confidence, the mediator will not disclose the information. The parties agree that the mediator is not acting as an attorney or providing legal advice on behalf of any party.

If a party wishes to terminate its participation for any reason, it may do so by giving notice to the mediator and the other parties. The parties will continue to be bound by the confidentiality provisions of this agreement and will also continue to be bound by their agreement to pay for those services rendered up to the point of that party's withdrawal.

## II. Disclosure.

The mediator, each party, and counsel confirm that they have disclosed any past or present relationship or other information that a reasonable person would believe could influence the mediator's impartiality and that no conflict of interest or appearance of a conflict of interest exists.

In addition, the mediator practices in association with JAMS. From time to time, JAMS may enter into arrangements with corporations (including insurance companies), government entities, and other organizations to make available dispute resolution professionals in a particular locale, for a specific type of matter or training, or for a particular period of time. Also, because of the nature and size of JAMS, the parties should assume that one or more of the other neutrals who practice with JAMS may have participated in an arbitration, mediation or other dispute resolution proceeding with the parties, counsel or insurers in this case and may do so in the future. Furthermore, the parties should be aware that each JAMS neutral, including the neutral in this case, has an economic interest in the overall financial success of JAMS. The mediator is not aware of any aspect of these relationships that would create a conflict or interfere with his/her acting as a mediator in this matter. The parties acknowledge that these factors do not constitute a conflict of interest or the appearance of a conflict of interest.

## III. Confidentiality.

In order to promote communication among the parties, counsel and the mediator and to facilitate settlement of the dispute, each of the undersigned agrees that the entire mediation process is confidential. All statements made during the course of the mediation are privileged settlement discussions, and are made without prejudice to any party's legal position, and are inadmissible for any purpose in any legal proceeding. These offers, promises, conduct and statements (a) will not be disclosed to third parties except persons associated with the participants in the process, and (b) are privileged and inadmissible for any purposes, including impeachment, under Rule 408 of the Federal Rules of Evidence and any applicable federal or state statute, rule or common law provisions.

JAMS
Mediation
Agreement

JAMS Ref. No.: 1420016696
Page 2 of 2

## IV.  Disqualification of Mediator and Exclusion of Liability.

Each party agrees to make no attempt to compel the mediator's or any JAMS employee's testimony, nor to compel the mediator or any JAMS employee to produce any document provided by the other party to the mediator or to JAMS.  The parties agree to defend the mediator and JAMS from any subpoenas from outside parties arising out of this Agreement or mediation. The parties agree that neither the mediator nor JAMS is a necessary party in any arbitral or judicial proceeding relating to the mediation or to the subject matter of the mediation.  Neither JAMS nor its employees or agents, including the mediator, shall be liable to any party for any act or omission in connection with any mediation conducted under this Agreement.

## V.  Records.

Any documents provided to the mediator by the parties will be destroyed by JAMS 30 days after the conclusion of the mediation, unless JAMS is otherwise instructed by the parties.

## VI.  Fees.

The parties and their attorneys agree to pay JAMS in accordance with their agreed upon division of fees and as set forth in the attached Fee Schedule, which is incorporated in this Agreement.

BY: _____  BY: _____

FOR: __AIG_____  FOR: _____

DATED: __8/30/06_____  DATED: _____

BY: _____  BY: _____

FOR: __AIG_____  FOR: _____

DATED: __8.30.06_____  DATED: _____

BY: _____  BY: _____

FOR: __Allen Clean_____  FOR: _____

DATED: __8/31/06_____  DATED: _____

BY: _____  BY: _____

FOR: _____  FOR: _____

DATED: _____  DATED: _____

# Exhibit G

1  **APPENDIX OF UNREPORTED AUTHORITIES**
2  **(L.R. 5-133(i))**

3      1.   *Employers Insurance of Wausau v. California*
4  *Water Service Co.*, Slip Copy, 2007 WL 2947423 (N.D. Cal.
5  October 9, 2007).
6

7      2.   *Conner Peripherals, Inc. v. Western Digital*
8  *Corp.*, 1993 WL 726815 (N.D. Cal., June 8, 1993), 31
9  U.S.P.Q. 2d 1042.
10

11      3.   *Brown v. Nicholson*, Slip Copy, 2007 WL 1237931
12  (E.D. Pa. April 25, 2007).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Westlaw.

Slip Copy                                                                                              Page 1
Slip Copy, 2007 WL 2947423 (N.D.Cal.)
(Cite as: Slip Copy)

**H**
Employers Ins. of Wausau v. California Water Service Co.
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.
EMPLOYERS INSURANCE OF WAUSAU,
Plaintiff,
v.
CALIFORNIA WATER SERVICE CO., Defendant.
No. C-06-3002 PVT.

Oct. 9, 2007.

Bryan M. Barber, Fulton Marcus Smith, III, Barber Law Group, San Francisco, CA, for Plaintiff.
A. Geoffrey Hutchinson, John H. Podesta, Branson Brinkop Griffith & Strong, LLP, Redwood City, CA, for Defendant.

### ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY

PATRICIA V. TRUMBULL, United States Magistrate Judge.

### I. INTRODUCTION

*1 This lawsuit involves the question of whether policies issued by Plaintiff Employers Insurance of Wausau ("Wausau") to Defendant California Water Service Co. ("Cal.Water") provide coverage for water contamination alleged in two underlying lawsuits that were filed in the Eastern District of California.[FN1] On August 14, 2007, the parties appeared before Magistrate Judge Patricia V. Trumbull for hearing on Wausau's Motion to Compel Production of Documents withheld by Cal. Water on claim of attorney client privilege. The issue before the court is whether Cal. Water waived the attorney client privilege and the work product immunity for communications involving itself, its counsel in the underlying litigation, and its counsel

in the current litigation. On August 15, 2007, the Court Ordered Supplemental Briefing on issues inadequately covered in the original briefs filed. Based on all of the papers filed, and the arguments of counsel at the hearing, the Court Denies Wausau's Motion to Compel Production of Documents.

> FN1. The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

### II. LEGAL STANDARDS

#### A. Legal Standards

A federal court exercising diversity jurisdiction applies California law to issues relating to the attorney-client privilege and federal law governs disposition of issues relating to work product immunity. Fed.R.Evid. 501; *First Pacific Networks, Inc. v. Atlantic Mut. Ins. Co.*, 163 F.R.D. 574, 577 (N.D.Cal.1995).

Under California law,
'confidential communication between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

Cal. Evid.Code § 952. California defines waiver as follows:Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section 954 (lawyer-client privilege) ... is waived with respect to a communication protected by the privilege if any holder of the privilege,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege.

Cal. Evid.Code § 912.

Additionally, California law guaranteed Cal. Water the right to independent counsel to be paid for by Wausau, if coverage exists for the underlying litigation. The law provides:

**\*2** When independent counsel has been selected by the insured, it shall be the duty of that counsel and the insured to disclose to the insurer all information concerning the action *except privileged materials relevant to coverage disputes,* and timely to inform and consult with the insurer on all matters relating to the action. Any claim of privilege asserted is subject to in camera review in the appropriate law and motion department of the superior court. Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

Cal. Civ.Code § 2860(d).

The attorney-client privilege may be impliedly waived by placing the contents of the privileged communications at issue in the case. However, "the party opposing the privilege bears the burden of showing that there has been an implied waiver."*2,022 Ranch, L.L .C. v. Superior Court,* 113 Cal.App.4th 1377, 1395, 7 Cal.Rptr.3d 197 (2003), *citing*Evid.Code, § 917. And waiver can only be shown by "demonstrating that the client has put the otherwise privileged communication directly at issue"*Id.*Finally, the scope of an implied waiver must be "narrowly defined and the information required to be disclosed must fit strictly within the confines of the waiver."*Transamerica Title Ins. Co. v. Superior Court,* 188 Cal.App.3d 1047, 1052, 233 Cal.Rptr. 825 (1987).

In order to resist discovery based on the work product immunity, a party must show that the discovery sought is: 1) a document or tangible thing; 2) that was prepared in anticipation of litigation; 3) by or for a party, or by or for its representative. *Admiral Ins. Co. v. United States District Court,* 881 F.2d 1486, 1494 (9th Cir.1989). The work product immunity "is aimed at protecting the effectiveness of a lawyer's trial preparations by immunizing such materials from discovery."*Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926 (N.D.Cal.1976). The work product immunity is also intended to "prevent exploitation of a party's efforts in preparing for litigation."*Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona,* 881 F.2d 1486, 1494 (9th Cir.1989).

## III. DISCUSSION

In the legal briefs filed, Wausau argued that Cal. Water had waived the attorney client privilege and work product immunity by placing the contents of the communications at issue. Wausau, however, originally argued only that the issues discussed in the communication were relevant and did not support the argument that the contents of the communications were directly at issue. (Mot. at 10:18-22).

At the hearing, Wausau appeared to argue that communications between John Podesta (counsel in this insurance coverage case) and Patrick Riddle and Paul Sheldon (counsel in the underlying environmental suits) as to when the contamination occurred are relevant and that attorney Podesta's opinion is relevant as an admission by Cal. Water. (Hearing Tr. at 19-22). Thus, Wausau argued, the substance of the communications is directly at issue in this lawsuit. Based on this new argument, the Court ordered supplemental briefing to allow Wausau to present legal authority for the novel proposition that an attorney's assessment of legal issues can be used as a party admission and to support the argument that the contents of the communications were directly at issue. Wausau was specifically directed to address the following California case law:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:07-cv-01015-LKK-EFB   Document 89   Filed 04/08/08   Page 58 of 76

Slip Copy                                                                                 Page 3
Slip Copy, 2007 WL 2947423 (N.D.Cal.)
(Cite as: Slip Copy)

*3 The in issue doctrine creates an implied waiver of the privilege only when the client tenders an issue involving the substance or content of a protected communication, not where the privileged communication simply represents one of several forms of indirect evidence in a particular case. (*Mitchell v. Superior Court (1984)* 37 Cal.3d 591, 606, 208 Cal.Rptr. 886, 691 P.2d 642.) For this reason, the doctrine has no application in a coverage action between an insured and its carrier where the issues turn on the underlying facts and the insured is not relying on the advice of counsel for any purpose.

*Rockwell Int'l. Corp. v. Superior Court,* 26 Cal.App.4th 1255, 1268, 32 Cal.Rptr.2d 153(1994).

### A. Waiver By Placing Contents At Issue

Wausau argues that Cal. Water created a new theory of liability against itself, for the sole purpose of triggering insurance coverage. Wausau asserts that the California Department of Toxic Substances Control ("DTSC") only claimed that Cal. Water was responsible for failing to properly decommission certain contaminated wells, allowing those wells to act as a conduit for PCE contaminated water to flow from shallow and intermediate aquifers into the deep aquifer (the "Vertical Theory of Liability"). According to Wausau, this cross-contamination conduct all occurred after 1984 at a time when the insurance policies precluded coverage. The argument continues that Cal Water, solely in order to create coverage, introduced a new theory of liability: that it was liable, starting before 1984, for increasing the PCE plume by pumping water (the "Horizontal Contamination Theory").

Wausau claims that the only evidence that Cal. Water has in support of its contention is a declaration from Paul Sheldon, counsel in the underlying litigation. Mr. Sheldon stated: "I understood from reviewing the pleadings and discussing the case with counsel for DTSC that the following were included in the claims presented against Cal Water as of December 2005."Mr. Sheldon then listed both the

Vertical and Horizontal theories of liability. (Sheldon Decl. iso Cal Water's Mtn for Summary Judgment, ¶ 13.). Accordingly, Wausau argues that Cal. Water's reliance upon its counsel's understanding of the theories of liability puts the contents of every document in which Mr. Sheldon discusses the topic of insurance coverage "directly at issue."

As Cal. Water argues, it has not relied upon the advice of its attorneys for any purpose. Instead, Cal. Water cites Mr. Sheldon as a percipient witness to the fact that the DTSC claimed that Cal. Water was liable for causing horizontal migration. Whether Cal. Water is or was liable under CERCLA will be proven by reference to the statute and the scientific reports. Thus, even if counsel's opinion is relevant, it is nothing more than indirect evidence. Additionally, Cal. Water has produced other evidence of Mr. Sheldon's belief that the DTSC was seeking to impose liability based on Horizontal Liability. Cal. Water produced a letter dated April 25, 2002 from Mr. Sheldon to Mr. Taylor, Vice President of Operation of Cal. Water, in which he references a conversation with Jim Tjosvold of the DTSC and that Mr. Tjosvold had asserted potential liability because "Cal Water has 'pumped from a well that increases the rate of flow [sic] contaminated groundwater' " (Hutchinson Decl. Exh. A.) Similarly, two letters written by Mr. Sheldon to Tim Sullivan of the Attorney General's office also express concern of the DTSC's original statement that horizontal movement of water could lead to liability and attempts to structure a settlement to exclude any such liability. (*Id.,* Exhs. B and C.) [FN2]

> FN2. Wausau originally paid for the defense, but ceased after a 1998 California case holding that administrative claims did not trigger coverage. In 2002, Cal. Water was trying to settle administrative claims for damages and no lawsuit had yet been filed. Wausau resumed providing the defense in 2003 after Cal. Water was named as a defendant in the underlying lawsuits.

*4 Moreover, Cal. Water has not relied upon "the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

substance or content of a protected communication."Instead, it has relied upon the contents of pleadings and a discussion between Mr. Sheldon and *opposing* counsel. Thus, the contents of a privileged communication were not relied upon by Cal. Water and Cal. Water has not put the substance of any privileged communication directly at issue.

**B. Waiver by Selective Disclosure**

Wausau next argues that Cal Water has waived the attorney client privilege by selective disclosure of documents relating to coverage issues. The documents that Wausau assets as selective disclosures of insurance coverage information, however, are simply not privileged. First, Wausau cites to handwritten notes stating "Golden Eagle Coverage?" (Smith Decl. Exh. E.) This sketchy reference to whether coverage is available or not does not amount to an unfair selective disclosure.

The next example is a memo about various litigation and settlement strategies. (Smith Decl. Exh. F.) The memo does evaluate various strategies and whether insurance would be available, for example winning litigation would yield insurance coverage and settling would not. However, these evaluations do not go to the heart of the coverage question. Instead, they are more a summary of black letter law and not an unfair selective disclosure.

On July 18, Cal. Water made a supplemental production of privilege log numbers 3, 7, and 9-13. On July 18, Cal. Water made a second supplemental production of privilege log numbers 3, 7, and 9-13. Wausau claims that Cal. Water's willingness to turn over some of the documents previously withheld is proof of selective disclosure. Wausau, however, does not assert any way in which Cal. Water received any tactical advantage from this allegedly selective disclosure. The Court's review of the documents produced reveals no tactical advantage; instead Cal Water has merely produced those documents that do not substantively address insurance coverage issues. For example, log number 7 merely

asks attorney Sheldon to review a document, keeping in mind whether future actions might effect Cal Water's right to coverage. The answer to that question was not produced and the question itself is not an unfair selective disclosure. Number 12 merely mentions that a stay of litigation will preserve insurance defense dollars. Similarly, number 13 merely mentions that the attorneys need copies of the insurance policies. The other documents either do not obviously mention insurance coverage or contain similar, innocuous references to the insurance company. Accordingly, there was no selective waiver and the Court will not punish Cal Water for cooperating in the discovery process.[FN3]

> FN3. Moreover, even if any waiver had been effected, it would be limited to the documents produced. California law jealously guards the attorney-client privilege and interprets all waivers narrowly. *See, e.g. Owens v. Palos Verdes Monaco,* 142 Cal.App.3d 855, 870-71, 191 Cal.Rptr. 381,(1983) (disapproved of on other grounds by, *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994) ("a waiver under Evidence Code section 912 relates to the particular communication which has been revealed and not to all communications concerning the subject matter of the lawsuit."); *Lohman v. Superior Court,* 81 Cal.App.3d 90, 94, 146 Cal.Rptr. 171 (1978); *Sony Computer Entertainment America, Inc. v. Great American Ins. Co.,* 229 F.R.D. 632, 635 (N.D.Cal.2005) (limiting waiver under California law to single email and any follow-up emails.)

**C. Attorney Opinion as Admission**

At the hearing, the Court asked Wausau if Mr. Podesta's opinion as to when the contamination occurred was relevant and Wausau responded: "It's certainly relevant. He's Cal Water, and in a case in which we are going against Cal Water in this

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

courtroom for insurance coverage, he is Cal Water and his admissions are going to be as damning from [sic] as anyone from Cal Water themselves."(Hearing Tr. at 21-22). The Court specifically required Wausau to provide authority for its assertion that statements made by Cal. Water's counsel could be considered admissions by Cal. Water. In response, Wausau merely asserts that Cal. Water has placed Mr. Sheldon's understanding at issue and that an *in camera* inspection is warranted because some of the withheld documents may be shielding statements concerning facts from discovery. (Supp. Br. at 6-7).

*5 Thus, Wausau has provided no legal authority for the astonishing proposition that an attorney's private assessment of liability to his client can be an admission of the client. Accordingly, the Court finds no basis for finding waiver of the attorney client privilege or work product immunity based on attorney statements being discoverable as admissions of their clients.

## D. Work Product Immunity

Wausau argued that the work product immunity does not apply to any documents created by underlying counsel because they were not created in anticipation of this litigation. "Litigation need not have already commenced in order for the work product doctrine to be operative, however, there must be more than a remote possibility of litigation."*Conner Peripherals, Inc. v. Western Digital Corp.,* 1993 WL 726815 at *4 (N.D.Cal. June 8, 1993). The privilege applies "if the prospect of litigation is identifiable because of specific claims that have already arisen."*Id.* The test is whether "the documents can fairly be said to have been prepared or obtained because of the prospect of the litigation."*Id.*

In this case, the instant coverage litigation was more than a "remote possibility." Wausau only tendered defense of the underlying litigation pursuant to a reservation of rights. Accordingly, the spe-

cific claim that the damage at issue in the underlying lawsuits was not covered by the relevant insurance policies and that Wausau might seek to reclaim defense costs had already arisen prior to issuance of these documents. Finally, underlying counsel only prepared documents relating to insurance coverage because the possibility had already arisen that coverage would be denied by Wausau.

Wausau next argues that the work product immunity is only a qualified protection and that they have met the showing to overcome the immunity.Federal Rule of Civil Procedure 26(b)(3), provides:

[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3); *see also McKenzie v. McCormick,* 27 F.3d 1415, 1420 (9th Cir.1994) (A "far greater showing of necessity and unavailability by other means [is] required for 'opinion' work product.")

Wausau baldly asserts that the "good cause" requirement has been met "for the reasons described above". (Mot. at 12.) Wausau, however, merely argued in its motion that the issues discussed in the documents sought were central to the litigation. Thus, Wausau has not established a "substantial need" for the documents in question.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 6
Slip Copy, 2007 WL 2947423 (N.D.Cal.)
**(Cite as: Slip Copy)**

## IV. CONCLUSION

\*6 For the foregoing reasons, It Is Hereby Ordered
that Wausau's Motion to Compel Production of
Documents is DENIED.

IT IS SO ORDERED.

N.D.Cal.,2007.
Employers Ins. of Wausau v. California Water Ser-
vice Co.
Slip Copy, 2007 WL 2947423 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 726815 (N.D.Cal.), 31 U.S.P.Q.2d 1042
(Cite as: Not Reported in F.Supp.)

Page 1

**H**
Conner Peripherals, Inc. v. Western Digital Corp.
N.D.Cal.,1993.

United States District Court, N.D. California.
CONNER PERIPHERALS, INC., Plaintiff,
v.
WESTERN DIGITAL CORP., Defendant.
No. C93-20117 RMW/EAI.

June 8, 1993.

Peter N. Detkin, Wilson, Sonsini, Goodrich & Ros-
ati, Palo Alto, CA, for Conner Peripherals.
Jonathan H. Steinberg, Peter Strawbrich, Irell &
Manella, Los Angeles, CA, for Western Digital.
Martin C. Fliesler, Fliesler, Dubb, Meyer & Love-
joy, San Francisco, CA.

ORDER RE IN CAMERA REVIEW OF DOCU-
MENTS WITHHELD BY CONNER PERIPHER-
ALS, INC.

INFANTE, United States Magistrate Judge.

*I. Introduction*

**\*1** Defendant Western Digital Corporation's
("Western Digital") Motion to Compel Production
of Documents was heard by telephonic conference
on June 4, 1993. Robert Strawbrich of Irell & Man-
ella appeared on behalf of Western Digital. Peter
Detkin of Wilson, Sonsini, Goodrich & Rosati ap-
peared on behalf of Plaintiff Conner Peripherals.

Pursuant to Rule 37, Fed.R.Civ.P., Defendant West-
ern Digital Corporation ("Western Digital") moves
to compel Plaintiff Conner Peripherals, Inc.
("Conner") to produce thirteen (13) documents that
Conner has refused to produce on the grounds of at-
torney-client privilege and/or work product doc-
trine.[FN1] Specifically, Western Digital seeks the
following categories of documents:
(1) all prior art searches and search reports, prior
art studies, draft patent applications, drafts of the

prosecuting attorneys' technical considerations and
drafts of the prosecuting attorneys' impressions and
conclusions regarding technical matters, created in
connection with the preparation and prosecution of
the applications for the patents in suit; and
(2) documents relating to whether Conner placed on
sale articles practicing U.S. Patent 4,979,056 more
than one year before the application for the patent
was filed.

Conner Peripherals has submitted copies of the con-
tested documents to the Court for an *in camera* in-
spection. Conner Peripherals has also submitted de-
tailed indexes of the documents which provide a
description of each contested document, the author
and recipients of the document, the date the docu-
ment was written, and the specific privilege
claimed. Copies of the indexes are attached as Ex-
hibit A to this opinion.

*II. Background*

This is an action for patent infringement. Plaintiff
Conner is a Delaware Corporation having its prin-
cipal place of business in San Jose, California.
Western Digital is a California Corporation having
its principal place of business in Irvine, California.
Western Digital also has established places of busi-
ness in San Jose and Mountain View.

Conner alleges that it is the owner of the entire
right, title and interest in and to the following pat-
ents:
1. U.S. Patent No. 4,933,785 entitled "DISK
DRIVE APPARATUS USING DYNAMIC LOAD-
ING/UNLOADING (the " '785 Patent");
2. U.S. Patent No. 4,965,684 entitled "LOWER
HEIGHT DISK DRIVE" (the " '684 Patent");
3. U.S. Patent No. 4,979,056 entitled "DISK
DRIVE SYSTEM CONTROLLER ARCHITEC-
TURE" (the "056 Patent");
4. U.S. Patent No. 4,829,395 entitled "DISK
DRIVE SYSTEM CONTROLLER ARCHITEC-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 2
Not Reported in F.Supp., 1993 WL 726815 (N.D.Cal.), 31 U.S.P.Q.2d 1042
(Cite as: Not Reported in F.Supp.)

TURE" (the " '395 Patent");
5. U.S. Patent No. 5, 025,336 entitled "DISK
DRIVE APPARATUS" (the " '336 Patent")

Conner alleges that Western Digital has and contin-
ues to infringe and/or induce others to infringe the
claims of the '785, '684, '056, '395, and '336 pat-
ents by making, using and selling disk drives fall-
ing within the scope of the claims of the patents,
and will continue to do so unless enjoined by the
court.

*2 Conner also alleges that Western Digital's acts
of infringement have caused irreparable injury to
Conner, including but not limited to damage due to
the infringing sales by Western Digital and the loss
of sales and profits Conner would have made but
for the infringing acts of Western Digital. Accord-
ingly, Conner seeks an injunction restraining West-
ern Digital from continued infringement of the
'785, '684, '056, '395, and '336 patents; damages
caused by Western Digital's infringement, including
loss of sales and profits; treble damages because of
the allegedly willful nature of Western Digital's
conduct; interest on damages; attorneys' fees and
costs; and such other relief as the court deems just
and equitable.

Defendant Western Digital Corporation denies that
it has infringed the '785, '684, '056, '395, and '336
patents, and contends that the claims of each of the
patents are invalid for failing to comply with the
provisions of the patent laws. (Title 35 U.S.C., in-
cluding without limitation 35 U.S.C. Sections 101
(Inventions Patentable), 102 (Conditions for Pat-
entability; Novelty and Loss of Right to Patent),
103 (Conditions for Patentability; Non-obvious
Subject Matter), and 112 (Specification)). Western
Digital also contends that Conner's claims for relief
are barred by the doctrines of laches; estoppel;
waiver; and unclean hands.

### III. Standards

A. Attorney-client Privilege

The attorney-client privilege applies only if the fol-
lowing elements are present:
(1) the asserted holder of the privilege is or sought
to become a client; (2) the person to whom the
communication was made (a) is a member of the
bar of a court, or his subordinate and (b) in connec-
tion with this communication is acting as a lawyer;
(3) the communication relates to a fact of which the
attorney was informed (a) by his client (b) without
the presence of strangers (c) for the purpose of se-
curing primarily either (i) an opinion on law or (ii)
legal services or (iii) assistance in some legal pro-
ceeding, and not (d) for the purpose of committing
a crime or tort; and (4) the privilege has been (a)
claimed and (b) not waived by the client.

*United States v. United Shoe Machinery Corp.,* 89
F.Supp. 357, 358-59 (D.Mass.1950). Communica-
tions made in the routine course of business, such
as transmittal letters or acknowledgement of receipt
letters, which disclose no privileged matters and
which are devoid of legal advice or requests for
such advice are not protected. *Hercules Inc. v. Ex-
xon Corp.,* 434 F.Supp. 136, 145 (1977), *citing,
Jack Winter, Inc. v. Koratron Company, Inc.,* 54
F.R.D. 44 (N.D.Cal.1971).

In patent matters, confidential communications
between attorney and client for the purpose of se-
curing legal advice concerning preparation or pro-
secution of a patent application are protected,
whether the attorney is employed as outside coun-
sel, in-house counsel, or as a member of the Patent
Department. *Hercules,* 434 F.Supp. at 147.
However, in each case, classifying communications
as protected or non-protected depends on whether
the patent attorney acted as legal adviser or as busi-
ness adviser. *Id.*

*3 Although a lawyer may advise as to both legal
and business ramifications, if the primary purpose
of a communication is to solicit or render advice on
business or other non-legal matters, the attorney-cli-
ent privilege does not apply. *Id.* at 147. For ex-
ample, communications regarding the competitive
position of the company, marketing strategy, licens-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ing policy, etc., reflect business concerns and are not privileged. In addition, the privilege does not apply when a patent attorney acts merely as a "conduit," relaying technical information such as the results of research, tests, and experiments to the Patent Office as part of the application process. *Id.* at 147-148. *See also, Quantum Corp. v. Western Digital Corp.,* 15 U.S.P.Q.2d 1062 (N.D.Cal.1990); *Bio-Rad Laboratories, Inc. v. Pharmacia, Inc.,* 130 F.R.D. 116 (N.D.Cal.1990). Alternatively, if the primary purpose of a communication is to solicit legal advice, although the documents contain considerable technical factual information, the privilege applies. *Id.* at 148,*citing, Jack Winter, Inc. v. Koratron Co., Inc., supra.*

In a fairly recent opinion, Magistrate Judge Brazil adopted the view that "communications from inventor to patent lawyer, even those that are entirely technical, remain *presumptively* protected by the attorney-client privilege." *Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.,* 144 F.R.D. 372, 378 (N.D.Cal.1992) (Emphasis added). In a carefully reasoned opinion, Magistrate Judge Brazil thoroughly analyzed the *Jack Winter* and *Quantum Corp.* line of authority and a competing line of cases, the most notable of which is *Knogo Corp. v. United States,* 213 U.S.P.Q. 936 (Ct.Cl.1980).[FN2] After a thorough analysis of the rationales underlying each line of cases, Judge Brazil expressly rejected *Jack Winter,* and followed the rationale underlying the *Knogo* court's decision.[FN3]

In *Knogo, supra,* the court reasoned that the patent attorney is not a mere conduit for either the client's communications containing the technical information or the technical information itself. Rather, the *Knogo* court stated,
The reality of the cooperative effort put forth by the inventor and the attorney is far different from the *Jack Winter* portrayal. The technical discussions between attorney and client enable the attorney to extract from this information one or more patentable inventions. The attorney then drafts one or more patent applications in accordance with the re-

quirements of the federal statutes and regulations.

*Knogo,* 213 U.S.P.Q. at 940-41. The *Knogo* court further stated, "The fact that much of the technical information in one form or another finds its way into the patent application, to be made public when the patent issues, should not preclude the assertion of the privilege over the communication in which that information was disclosed to the attorney." *Knogo,* 213 U.S.P.Q. at 941. Accordingly, the *Knogo* court upheld the plaintiff's claim of attorney-client privilege as to several documents containing confidential information, including technical information, communicated between attorney and client for the purpose of securing legal advice.

*B. Work Product*

*4 The work product doctrine protects materials prepared by a party, or any representative of the party including an attorney, in anticipation of litigation. *Hickman v. Taylor,* 329 U.S. 495 (1947); F.R.Civ.P. 26(b)(3). Typically, the work product doctrine protects memoranda, recorded mental impressions, observations, opinions, synopses of witness statements, drafts of documents, etc., prepared by an attorney "with an eye to litigation." *Hercules,* 434 F.Supp. at 150. *See also, Handgards, supra.* Litigation need not have already commenced in order for the work product doctrine to be operative, however, there must be more than a remote possibility of litigation. *Fox v. California Sierra Financial Services,* 120 F.R.D. 520 (N.D.Cal.1988).

When litigation is a "mere contingency" at the time the document is prepared, the privilege applies if the prospect of litigation is identifiable because of specific claims that have already arisen. *Hercules,* 434 F.Supp. at 151,*citing, Sylgab Steep and Wire Corp. v. Imoco-Gateway Corp.,* 62 F.R.D. 454 (N.D.Ill.1974); *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.,* 47 F.R.D. 334 (S.D.N.Y.1969). The test to be applied is "whether, in light of the nature of the documents and the factual situation in this particular case, the document

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 726815 (N.D.Cal.), 31 U.S.P.Q.2d 1042
(Cite as: Not Reported in F.Supp.)

can fairly be said to have been prepared or obtained because of the prospect of litigation." *Hercules Inc. v. Exxon Corp., supra, citing,*8 Wright & Miller, Federal Practice and Procedure § 2022.

In patent cases, the work product immunity applies to documents prepared in anticipation of proceedings before the Board of Patent Interferences. *Hercules,* 434 F.Supp. at 151,*citing, Natta v. Zletz* 418 F.2d 633 (7th Cir.1969); *In re Natta,* 410 F.2d 187 (3rd Cir.1969); *Natta v. Hogan,* 392 F.2d 686 (10th Cir.1968). In addition, the work product immunity has been held applicable in the following specific instances: preliminary drafts of legal documents, license agreements and/or assignments, *Jack Winter, Inc. v. Koratron Co., supra;* opinion letters and background memoranda with respect to the scope and validity of patents and patent applications, *Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp., supra; Stix Products, Inc. v. United Merchants & Manufacturers, Inc., supra;* attorney's analysis or assessments of a party's position with respect to other parties in an ongoing interference, *In re Natta, supra;* and intra-office or file notes and memoranda containing summaries of conferences, legal research and comments on technical information prepared by outside patent counsel or patent department attorneys in connection with an interference. *Natta v. Zletz,* 418 F.2d 633 (7th Cir.1969).

With respect to documents prepared during nonadversarial *ex parte* patent applications, the work product immunity applies if the primary concern of the attorney is with future litigation rather than the ongoing patent application prosecution. Alternatively, the work product immunity does not apply if the primary concern is with claims raised in the *ex parte* patent application prosecution. *Hercules,* 434 F.Supp. at 152; *Hewlett-Packard,* 116 F.R.D. at 543-44,*citing Hercules.*FN4

## IV. Analysis

**\*5** Having carefully reviewed the contested documents submitted *in camera,* and having applied the principles set forth above, Conner Peripheral's

claim of attorney-client privilege is upheld as to each of the thirteen contested documents. Document Nos. 3, 4, 5, 6, 9, 10, 11, and 13 are opinion letters from an attorney to a client which were written for the sole purpose of providing legal advice with respect to the pending patent applications. They discuss possible approaches by the attorney or inventor to prosecute a patent, and the legal effect of the patent application. Thus, the documents do not reflect merely communications of technical information relayed from an inventor to an attorney during the patent prosecution process.

Document Nos. 2 and 7 are copies of the same draft patent application, and No. 8 is a later draft of the same patent application, which were prepared by an attorney and transmitted to a client. They reflect the complex discourse between an inventor and his patent attorney and their efforts to obtain the strongest permissible patent protection for the invention.

Document Nos. 1 and 12 are a series of notes recording an attorney's conversations with Conner employees during the attorney's investigation of the Compaq-Conner relationship and patent application strategies, respectively.FN5 These conversations were held with the purpose of providing legal advice to Conner Peripherals. Accordingly, all the contested documents are protected by the attorney-client privilege.

Although Conner Peripheral also contends that some of the documents are protected by the work-product doctrine, it is unnecessary to reach the issue in view of the protection afforded to the documents by the attorney-client privilege. Western Digital's Motion to Compel Production of Documents is DENIED.

The documents submitted *in camera* shall be returned to counsel for Conner Peripherals forthwith.

IT IS SO ORDERED.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 5
Not Reported in F.Supp., 1993 WL 726815 (N.D.Cal.), 31 U.S.P.Q.2d 1042
(Cite as: Not Reported in F.Supp.)

**CONNER PERIPHERALS V. WESTERN DIGITAL CORPORATION**
**Civil Action No. C-93 20117**

**PRIVILEGED DOCUMENTS RE: MOTION TO COMPEL**

| Tab No. | Privilege Number | To | From | Date | Document Type | Description |
|---|---|---|---|---|---|---|
| 1 | W000045-W000090 W000092-W000100 | | Gerald B. Rosenberg, Esq. | N/A | Notes | Series of notes discussing atty. efforts to learn details of early Compaq/-Conner relationship. |
| 2 | W003750-W003806 | Jim Morehouse | David Zinger, Esq. | 01/21/88 | Patent application | Initial draft U.S. patent application for disk drive for portable computers; discussion of possible approaches. |
| 3 | W004653-W004655 | James Morehouse | David Zinger, Esq. | 02/13/90 | Letter | Summary of scope of '785 patent application. |
| 4 | W004657-W004660 | James Morehouse | David Zinger, Esq. | 09/25/89 | Letter | Summary of scope of '785 patent application. |
| 5 | W004674-W004678 | James Morehouse | David Zinger, Esq. | 09/21/89 | Letter | Summary of patent application coverage for disk drive patent. |
| 6 | W004717-W004718 | James Morehouse | David Zinger, Esq. | 12/07/87 | Letter | Strategy for patent application process with respect to two-inch disk drive system. |
| 7 | W004757-W004813 | File | David Zinger, Esq. | 01/21/88 | Patent | Draft of '785 Patent appl. w/attorney David Zinger notes. |
| 8 | W004871-W004923 | File | David Zinger, Esq. | 00/00/00 | Patent | Draft for disk drive apparatus patent application with D. Zinger notes. |
| 9 | W005567-W005568 | William Schroeder | Martin Fliesler, Esq. | 06/04/87 | Letter | Discussion of various patent applications filed with the PTO. |
| 10 | W005569-W005570 | Robert Wilder, Esq. | Martin C. Fliesler, Esq. | 06/04/87 | Letter | Discussion of various patent applications filed with the PTO. |
| 11 | W005572-W005573 | John Squires | Gerald Rosenberg, Esq. | 05/28/87 | Letter | Discussion of draft patent application. |
| 12 | W005574-W005577 | File Martin Fliesler, Esq. Gerald Rosenberg, Esq. | Mark Miller, Esq. | 04/29/87 | Memo | Record of thoughts and impression of meeting at Conner Peripherals on 4/27/87 with Gerald Rosenberg, John Squires, Mark Stefansky, and Tom Fiers concerning shipment of disk drives. |
| 13 | W005590-W005605 | Conner Executive Staff | William Schroeder | 04/22/87 | Memo to attachment | Record of conversation with Martin Fliesler, Esq. concerning patent application strategy, includes attachment from Gerald Rosenberg, Esq. concerning patent application strategy. |

**EXHIBIT "A"**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 6
Not Reported in F.Supp., 1993 WL 726815 (N.D.Cal.), 31 U.S.P.Q.2d 1042
(Cite as: Not Reported in F.Supp.)

HIGHLY CONFIDENTIAL
- ATTORNEY EYES ONLY

CONNER PERIPHERALS V. WESTERN DIGITAL CORPORATION
CON6221.554

PRIVILEGED DOCUMENTS INDEX (Part 1, W00001-02416)

| Privilege Number | To | From | Date | Document Type | Description | Atty/ Client Priv. | Atty Work-Prod. |
|---|---|---|---|---|---|---|---|
| W00045-W00090-W00092-W000100 | | Gerald B. Rosenberg, Esq. | N/A | Notes | Series of notes discussing atty. efforts to learn details of early Compaq/Conner relationship | X | X |
| W003750-W003808 | James Morehouse | David Zinger, Esq. | 01/21/88 | Patent application | Initial draft U.S. patent application for disk drive for portable computers; discussion of possible approaches | X | X |
| W004653-W004655 | Jim Morehouse | David Zinger, Esq. | 02/13/90 | Letter | Summary of scope of '785 patent application | X | |
| W004657-W004660 | James Morehouse | David Zinger, Esq. | 09/25/89 | Letter | Summary of scope of '785 patent application | X | |
| W004674-W004678 | James Morehouse | David Zinger, Esq. | 09/21/89 | Letter | Summary of patent application coverage for disc drive patent | X | |
| W004717-W004718 | James Morehouse | David Zinger, Esq. | 12/07/87 | Letter | Strategy for patent application process with respect to two-inch disk drive system | X | |
| W004757-W004813 | File | David Zinger, Esq. | 01/21/88 | Patent | Draft of '785 Patent appl. w/ attorney David Zinger notes | X | |
| W004871-W004923 | File | David Zinger, Esq. | 00/00/00 | Patent | Draft for disc drive apparatus patent application with D. Zinger notes | X | |
| W005567-W005568 | William Schroeder | Martin Fleisler, Esq. | 06/04/87 | Letter | Discussions of various patent applications filed with the PTO. | X | |
| W005569-W005570 | Robert Wilder, Esq. | Martin C. Fleisler, Esq. | 06/04/87 | Letter | Discussions of various patent applications filed with the PTO. | X | |

CONNER PERIPHERALS V. WESTERN DIGITAL CORPORATION

| Privilege Number | To | From | Date | Document Type | Description | Atty/ Client Priv. | Atty Work Prod. |
|---|---|---|---|---|---|---|---|
| W005572-W005573 | John Squires | Gerald Rosenberg, Esq. | 05/28/87 | Letter | Discussions of draft patent application. | X | |
| W005574-W005577 | File Martin C. Fleisler, Esq. Gerald Rosenberg, Esq. | Mark Miller, Esq. | 04/29/87 | Memo | Record and thoughts and impression of meeting at Conner Peripherals on 4/27/87 with Gerald Rosenberg, John Squires, Mark Surfansky, and Tom Fiers concerning shipment of disk drives. | X | X |
| W005590-W005605 | Conner Executive Staff | William Schroeder | 04/22/87 | Memo with attachment | Record of conversation with Martin Fleisler, Esq. concerning patent application strategy, includes attachment from Gerald Rosenberg, Esq. concerning patent application strategy. | X | X |

FN1. The documents which Western Digital has placed at issue on this motion to compel are limited to those that Western Digital believes are necessary for its defense on the pending motion for preliminary injunction. Western Digital has specifically not sought to compel production of all of those purportedly privileged documents as to which Western Digital believes it is entitled as a matter of law, and accordingly expressly reserves its right to seek production of additional allegedly priv-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                           Page 7
Not Reported in F.Supp., 1993 WL 726815 (N.D.Cal.), 31 U.S.P.Q.2d 1042
**(Cite as: Not Reported in F.Supp.)**

ileged documents.

FN2. *Knogo, supra,* has been cited in the following cases: *Golden Trade S.r.l. v. Lee Apparel Co.,* 1992 WL 367070, at \*3, 1992 U.S.Dist. LEXIS 17739, at 6 (S.D.N.Y.1992); *Cuno, Inc. v. Pall Corp.,* 121 F.R.D. 198 (E.D.N.Y.1988); *Glaxo, Inc. v. Novopharm, Ltd.,* 148 F.R.D. 535, 538, (E.D.N.C.1993); *FMC Corp. v. Old Dominion Brush Co.,* 229 U.S.P.Q. 150, 151 (W.D.Mo.1985); *Minn. Mining & Mfg. Co. v. Ampad Corp.,* 7 U.S.P.Q.2d 1589, 1591 (D.C.Mass.1987); *Burroughs Wellcome Co. v. Barr Laboratories, Inc.,* 143 F.R.D. 611, 616 (E.D.N.C.1992); *In re application of Mineba Co., Ltd.,* 143 F.R.D. 494, 501 (S.D.N.Y.1992); *Rohm & Haas Co. v. Brotech Corp.,* 815 F.Supp. 793, 796 (D.Del.1993).

FN3. Thus, Magistrate Judge Brazil declined to follow his earlier opinion in *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 116 F.R.D 533, 542 (N.D.Cal.1987).

FN4. Western Digital cites to several cases for authority that an attorney's preparation and prosecution of patent applications do not generally qualify for work product protection. *McNeil-PPC, Inc v. Procter & Gamble Co.,* 136 F.R.D. 666, 671 (D.Colo.1991), *quoting, Oak Industries v. Zenith Electronics Corp.,* 687 F.Supp. 369, 374 (N.D.Ill.1988) and *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.,* 132 F.R.D. 204, 212 (N.D.Ind.1990). However, these cases do not hold that an attorney's preparation and prosecution of patent applications can never constitute protected work product. Rather, in each case, the courts applied the work product doctrine to patent proceedings to the same extent as to discovery in other proceedings. The courts ultimately held that the work product doctrine did not apply because the

attorney's preparation and prosecution of patent applications was too distant in time to be characterized as having been made "in anticipation of litigation." *See also, Bulk Lift Intern, Inc. v. Flexcon & Systems, Inc.,* 122 F.R.D. 482, 491 (W.D.La1988). Thus, the *Hercules* court's test for applying the work product doctrine does not conflict with the cases cited above, but adds further definition to the phrase "in anticipation of litigation."

FN5. Conner Peripherals and Compaq were joint venturers in the development of the early Conner drives.

N.D.Cal.,1993.
Conner Peripherals, Inc. v. Western Digital Corp.
Not Reported in F.Supp., 1993 WL 726815 (N.D.Cal.), 31 U.S.P.Q.2d 1042

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2007 WL 1237931 (E.D.Pa.)
(Cite as: Slip Copy)

Page 1

Brown v. Nicholson
E.D.Pa.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Maria Canales BROWN in her own right and as
Administratrix of the Estate of Gerald Brown

v.

Stephen NICHOLSON.
**Civil Action No. 06-5149.**

April 25, 2007.

Gary I. Spivack, Solomon Sherman & Gabay, Philadelphia, PA, for Maria Canales Brown in her own right and as Administratrix of the Estate of Gerald Brown.
Gerard X. Smith, Naulty Scaricamazza & McDevitt LTD, Philadelphia, PA, for Stephen Nicholson.

### *MEMORANDUM & ORDER*

SURRICK, J.
*1 Presently before the Court is Plaintiff's Motion for Order Compelling Discovery (Doc. No. 14) and Defendant's letter response dated April 17, 2007. For the following reasons, the Motion will be denied.

### I. BACKGROUND

This action concerns a motor vehicle accident that occurred on April 18, 2005 in Philadelphia. (Doc. No. 4 at 1.) Defendant Stephen Nicholson was driving an automobile that collided with the motorcycle being operated by Plaintiff's decedent, Gerald Brown. (*Id.*) Brown died as a result of the accident. The Complaint is based on the alleged negligence of the Defendant. (*Id.*) Plaintiff originally filed the Complaint in the Court of Common Pleas of Philadelphia on August 18, 2006. (Doc. No. 1 at 4.) The Complaint was reinstated on September 29, 2006. (*Id.*) On November 21, 2006, the case was removed to this Court based on diversity jurisdiction under

28 U.S.C. §§ 1332, 1441, and 1446. (*Id.*) Plaintiff's Complaint alleges claims under the Pennsylvania Wrongful Death Act (Count I) and the Pennsylvania Survival Act (Count II) and states a claim for loss of consortium (Count III).

Plaintiff's Motion seeks to compel production of three statements made to Defendant's insurance carrier or its representative. Plaintiff contends that these statements are discoverable. Defendant argues that the statements are all privileged work product and are not discoverable.

The first statement is a statement by Defendant Nicholson. It was made to Nicholson's insurance carrier, Performance Insurance, on August 3, 2005, three-and-a-half months after the accident. (Def.'s Letter of Apr. 17, 2007.) The statement was taken over the phone in the presence of Nicholson's personal attorney and consists of questions and answers regarding the accident of April 18, 2005. The statement was recorded and subsequently transcribed. (*Id.*) The second statement is also by Nicholson but was given to an investigator hired by Nicholson's insurance carrier. The statement was taken in person and was made in the presence of Nicholson's personal attorney in that attorney's office. It consists of questions and answers concerning the accident of April 18, 2005. The statement was recorded and subsequently transcribed. (*Id.*) The final statement is the statement of David Culbreth, a witness to the accident. It is a recorded statement that was reduced to writing. The statement was made to Stanley Kanterman of Investigative Resource Center, Inc., a firm hired by Defendant's insurance carrier. The assignment to take Culbreth's statement was given to Kanterman on August 5, 2005. (*Id.*)

### II. LEGAL ANALYSIS

Citing Federal Rule of Evidence 501, Plaintiff contends that because the claims in this case are based

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

on Pennsylvania law, the decision regarding privilege should be determined based on Pennsylvania law.[FN1]Plaintiff then focuses the argument solely on attorney-client privilege under Pennsylvania law and Pennsylvania Rule of Civil Procedure 4003.3 regarding the work-product privilege. While Plaintiff is correct that generally, in diversity cases, "the law of privilege which controls is that which would be applied by the courts of the state in which it sits,"*Maertin v. Armstrong World Industries, Inc.,* 172 F.R.D. 143, 147 (D.N.J.1997), that is not the case when the work-product privilege is at issue.[FN2]"[U]nlike the attorney-client privilege, the work product privilege is governed, even in diversity cases, by uniform federal law embodied in Rule 26(b)(3), Fed.R.Civ.P."*Id.;United Coal Cos. v. Powell Constr. Co.,* 839 F.2d 958, 966 (3d Cir.1988).

> FN1.Federal Rule of Evidence 501 provides in relevant part: "[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."Fed.R.Evid.501.

> FN2. Defendant contends that the work-product privilege embodied in Fed.R.Civ.P. 26(b)(3) applies to the statements at issue. Defendant does not assert attorney-client privilege.

*2 Federal Rule of Civil Procedure 26(b)(3) provides: Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has sub-stantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed.R.Civ.P. 26(b)(3). The rule requires that we consider three questions in determining whether the statements at issue in this case are discoverable: (1) whether the statements were made "in anticipation of litigation," (2) whether Plaintiff has shown "substantial need" of the statements, and (3) whether Plaintiff is "unable without undue hardship to obtain the substantial equivalent" of the statements.

In considering the first question, we are mindful of the nature of the statements, made not to Defense counsel, but to Defendant's insurance carrier and its representatives. However, "federal courts have consistently ruled that the work product doctrine is not inapplicable merely because the material was prepared by or for a party's insurer or agents of the insurer."*United Coal Cos.,* 839 F.2d at 966 (citing *R.R. Salvage of Conn. Inc. v. Japan Freight Consolidators (U.S.A.), Inc.,* 97 F.R.D. 37, 41 (E.D.N.Y.1983) (holding that correspondence between defendant and its liability carriers was protected), *aff'd,*779 F.2d 38 (2d Cir.1985); *Home Ins. Co. v. Ballenger Corp.,* 74 F.R.D. 93, 101 (N.D.Ga.1977) (protecting from discovery a report to plaintiff insurer's home office made by plaintiff's regional claims supervisor)). The fact that these statements were made to Defendant's insurance carrier, or investigators hired by the insurance carrier, does not exempt them from coverage under Rule 26(b)(3) nor does it automatically entitle them to the Rule's protection. *See Lyvan v. Harleysville Ins. Co.,* No. Civ. A. 93-6145, 1994 WL 533907, at *3 (E.D.Pa. Sept.29, 1994) ("An insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate and make a decision with respect to claims made on it by its insureds.").

When deciding whether statements made to insurance companies should receive work-product pro-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 4 of 5

Case 2:07-cv-01015-LKK-EFB   Document 89   Filed 04/08/08   Page 73 of 76

Slip Copy
Slip Copy, 2007 WL 1237931 (E.D.Pa.)
(Cite as: Slip Copy)

Page 3

tection, courts, deciding these questions on a case by case basis, "have considered the nature of the documents, the nature of the litigation, the relationship between the parties and any other fact peculiar to the case."*Id.* (citing *Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos.,* 123 F.R.D. 198, 202 (M.D.N.C.1988)). In addition, courts have considered the involvement of an attorney to be "highly relevant, although not necessarily [the] controlling factor."*Id.* (citing *Fine v. Bellefonte Underwriters Ins. Co.,* 91 F.R.D. 420 (S.D.N.Y.1981)).

*3 We are persuaded that the statements here fall within the category of work product, having been produced "in anticipation of litigation." The statements at issue were made by Defendant and by an eyewitness to the event that is the basis of the litigation. That event was a motor vehicle accident that resulted in Plaintiff's death. The first statement was made by Defendant to his insurance carrier in the presence of his personal attorney. The second was made by Defendant, again in the presence of his attorney, to an investigator hired by the insurance company, and the third was made by an eyewitness to an investigator hired by the insurance company. The facts of this case, a fatal vehicular accident, made litigation likely if not certain. *See Carson v. Mar-tee Inc.,* 165 F.R.D. 48, 50 (E.D.Pa.1996) (finding defendant's statements to insurer to be made in anticipation of litigation when, among other factors, case dealt with a rear-end vehicular accident in Philadelphia County). In addition, the involvement of an investigator suggests that the parties believed litigation to be imminent. *See Rintchen v. Walker,* No. Civ. A. 95-CV-6861, 1996 WL 238701, at *3 (E.D.Pa.1996) ("Unlike an insurance agency, which conducts investigations both in the ordinary course of business and in anticipation of litigation, an investigation agency is more likely to be hired in anticipation of litigation. This is particularly so when there is already an insurance carrier investigating the same claim."(quoting *Jet Plastica Indus., Inc. v. Goodson Polymers, Inc.,* Civ. A. No. 91-3470, 1992 WL 10474 at *2

(E.D.Pa. Jan.15, 1992))). Finally, the presence of Defendant's personal attorney at the first two statements suggests that the parties were acting under the belief that litigation was likely. As a result, we conclude that the statements were taken in anticipation of litigation, warranting the protection of Rule 26(b)(3).

Having so concluded, we now consider the second and third questions, whether Plaintiff has shown both a "substantial need" and an inability without "undue hardship" to obtain the "substantial equivalent" of the statements. While Plaintiff may reasonably argue that there is a substantial need for statements made by Defendant and an eyewitness about the subject of the litigation, Plaintiff cannot make a reasonable argument regarding the third prong. Plaintiff can, in the normal course of discovery, obtain the substantial equivalent of all three statements at issue. Plaintiff has already deposed Defendant without restrictions and without pending objections on the record. (Def.'s Letter of Apr. 17, 2007.) As such, any topics covered by Defendant's statements could have been addressed in the deposition. Had Defendant been hostile or reluctant to speak during his deposition, there might be some reason to believe that the deposition testimony would not be the substantial equivalent of the prior statement. *See Basinger v. Glacier Carriers, Inc.,* 107 F.R.D. 771, 774 (M.D.Pa.1985). Plaintiff has made no such allegation. Moreover, while Plaintiff has not yet deposed the witness, Plaintiff's counsel has indicated that he plans to subpoena him for a deposition. Plaintiff has offered no reason to believe that the witness will be anything but truthful and cooperative.

*4 In addition, the timing of the statements do not prevent depositions from serving as their substantial equivalents. While the statements were made closer to the time of the accident, they were not contemporaneous with it and, as a result, are not so unique that they cannot be substantially replicated in depositions. *See id.*("[M]ere lapse of time should normally be enough to require production only of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                        Page 4
Slip Copy, 2007 WL 1237931 (E.D.Pa.)
**(Cite as: Slip Copy)**

statements given at almost the same time as the ac-
cident. Were a statement given a week, or two
weeks, after the accident at issue, the court might
well require counsel to demonstrate ... that the wit-
ness was not available for deposition without undue
hardship."(quoting *Hamilton v. Canal Barge Co.,*
395 F.Supp. 975, 978 (E.D.La.1974))); *see also
Carson,* 165 F.R.D. at 50 (finding that plaintiffs
had not made the requisite showing under Rule
26(b)(3) because statement at issue, "made months
after the accident, [wa]s not the most contemporan-
eous"). Finally, the mere possibility that Defendant
or the witness may contradict their prior statements
when deposed, making the statements impeachment
material, is insufficient to warrant exempting the
material from Rule 26(b)(3) protection. *See Spruill
v. Winner Ford of Dover, Ltd.,* 175 F.R.D. 194, 202
(D.Del.1997) ("[T]he possibility of impeachment
does not satisfy the showing required by Rule 26.");
*see also Dingler v. Halcyon Lijn N.V.,* 50 F.R.D.
211, 212 (E.D.Pa.1970).[FN3]

> FN3. It may be appropriate in limited cir-
> cumstances for the Court to conduct an *in
> camera* review of the statements at issue
> when there is reason to believe that the de-
> position testimony is inconsistent with the
> prior statement and thus not its substantial
> equivalent. *See Hoban v. Morrow's Mar-
> ina, Inc.,* Civ. A. No. 88-6022, 1989 WL
> 4453, at *2 (E.D.Pa. Jan.20, 1989)
> (ordering defendant to produce statement
> after *in camera* review where deposed
> party disavowed prior statement in depos-
> ition). Plaintiff has provided no reason for
> the Court to undertake such a review in
> this case.

As a result, we are compelled to conclude that all
three statements are covered by Rule 26(b)(3)'s pro-
tections and are not discoverable. Accordingly, we
will deny Plaintiff's Motion to Compel.

An appropriate Order follows.

### *ORDER*

AND NOW, this *25th* day of April, 2007, upon
consideration of Plaintiff's Motion For Order Com-
pelling Discovery (Doc. No. 14), it is ORDERED
that the Motion is DENIED.

IT IS SO ORDERED.

E.D.Pa.,2007.
Brown v. Nicholson
Slip Copy, 2007 WL 1237931 (E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1 | Mona Z. Hanna, Esq., SBN 131439
2 | **MICHELMAN & ROBINSON, LLP**
4 Hutton Centre Drive, Suite 300
3 | Santa Ana, California 92707
4 | Telephone:   (714) 557-7990;
Facsimile:   (714) 557-7991
5 | Robert E. Davies, Esq., SBN 106810
6 | **CAULFIELD, DAVIES & DONAHUE LLP**
P.O. Box 277010
7 | Sacramento, CA 95827-7010
8 | Telephone: (916) 817-2900
Facsimile: (916) 817-2644
9 |
Lewis E. Hassett, Esq.
10 | Jessica F. Pardi, Esq.
11 | **MORRIS, MANNING & MARTIN, LLP**
1600 Atlanta Financial Center
12 | 3343 Peachtree Road
13 | Atlanta, Georgia 30326
Telephone:   (404) 233-7000;
14 | Facsimile:   (404) 365-9532

15 | **Attorneys for Defendant:**
**ACCESS CLAIMS ADMINISTRATORS, INC.**
16 |

17 |                    **UNITED STATES DISTRICT COURT**
                    **EASTERN DISTRICT OF CALIFORNIA**
18 |                       **SACRAMENTO DIVISION**

19 | LINCOLN GENERAL INSURANCE ) Case No. 2:07-cv-01015-LKK-
20 | COMPANY,                                    ) EFB
                    Plaintiff,         )
21 |                                             ) **DEFENDANT'S BRIEF IN**
                                              ) **SUPPORT OF MOTION TO QUASH**
22 |          v.                               ) **SUBPOENA DUCES TECUM TO**
                                              ) **AMERICAN INTERNATIONAL**
23 | ACCESS CLAIMS                       ) **SPECIALTY LINES INSURANCE**
24 | ADMINISTRATORS, INC., and ) **COMPANY**
DOES 1 through 75,            )
25 | inclusive, et al.,             )
                                              ) Complaint Filed: APRIL 9,
26 |                    Defendants.    ) 2007
27 | _____

28 |                       **CERTIFICATE OF SERVICE**

                                         Defendant's Brief in
                                         Support of Motion to
                       16                Quash Subpoena

1    I hereby certify that on April _B_, 2008, I
2   electronically filed with the Clerk of Court the
3   foregoing DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO
4   QUASH SUBPOENA DUCES TECUM TO AMERICAN INTERNATIONAL
5   SPECIALTY LINES INSURANCE COMPANY using the CM/ECF
6   system which will automatically send email notification
7   of such filing to the following attorneys of record:

8                 Brian P. Worthington, Esq.
9                 Ryan Mercaldo & Worthington LLP
                  3636 Nobel Drive, Suite 200
10                San Diego, California  92122

11                Steven W. Zoffer, Esq.
12                Frederick W. Bode, III, Esq.
                  Dickie, McCamey & Chilcote, P.C.
13                Two PPG Place, Suite 400
14                Pittsburgh, Pennsylvania  15222-5402

15       This _B_ day of April, 2008.
16
                       MORRIS, MANNING & MARTIN, LLP
17
18
19                     Benjamin T. Erwin
20                     Georgia Bar No. 143055

21                     Attorneys for Access Claims
22                     Administrators, Inc.

23  1600 Atlanta Financial Center
24  3343 Peachtree Road, N.E.
    Atlanta, Georgia 30326
25  Phone: (404) 233-7000
26  Fax: (404) 365-9532

27

28

                                    Defendant's Brief in
                                    Support of Motion to
                         17         Quash Subpoena